Loomis *v.* Loomis.

———— • o • ————

## JESSE LOOMIS *vs.* SAMUEL I. LOOMIS.

The plaintiff's farm, being sold on a mortgage foreclosure, was bid off for $2400, by W. who agreed, orally, with the plaintiff to let him have the farm back on the payment of said sum of $2400, and the sum of $20 in addition, for expenses. The plaintiff failing to procure the money, or security, within the time limited, got an extension of time, and within the extended time, procured the defendant to take a conveyance from W. upon the terms on which W. had agreed to convey to the plaintiff; and it was then agreed, by parol, between the parties, that the plaintiff should remain in possession, and receive the rents and profits, and with them, and from other sources, refund to the defendant what he had paid, or should pay or secure, to W., and that on such payment, the defendant should convey the premises to the plaintiff. *Held* that the agreement of the defendant to convey the premises, being by parol, was void by the statute of frauds, and could not be enforced in equity.

*Held, also,* that the plaintiff having, at the time of making the agreement, no

Loomis *v.* Loomis.

title or interest in the premises, and there being no legal consideration received from him, for the promise made by the defendant, that was another difficulty thrown in his way by the statute of frauds.

*Held, further,* that there could be no express trust, in the case, for the reasons that the plaintiff had no estate to put in trust, and because there was no writing to make a valid trust. Nor could there have been a resulting trust, according to the provisions of the statute, (1 *R. S.* 723, §§ 51, 54,) no valuable consideration having been paid by the plaintiff, and the conveyance being absolute upon its face.

That the conveyance being in the form which the parties agreed upon, it could not have been a mortgage, and in this particular there was no fraud. Neither had the plaintiff, in law, any estate to mortgage.

THE plaintiff in this case owned a farm that was incumbered by himself, by mortgage, which was duly foreclosed, and the premises bid in by one Jabez R. Ward, the attorney of the mortgagee, for $2400, which was less than its true value. Ward agreed, orally, with the plaintiff to let him have the farm back on the payment of said sum of $2400, and $20, added for expenses, and gave him, the plaintiff, a certain time to procure the money or security for that purpose. The plaintiff failed to procure it within the time given, and got an extension of time ; the plaintiff in the meantime holding the possession. Within this extended time, the plaintiff obtained his brother, the defendant, to take a conveyance from Ward, upon the terms on which Ward had agreed to convey it to the plaintiff; and it was then agreed, by parol, ·between the plaintiff and the defendant, that the plaintiff should remain in possession, and receive the rents and profits, and with them and from other sources, refund to the defendant what he had paid or should pay or secure to Ward, and then that the defendant should convey the premises to the plaintiff. On the sale, by the mortgagee, there was a surplus of $83.67, belonging to the plaintiff, over and above paying the amount of principal, interest and costs, and the defendant used this sum, in his purchase from Ward, towards paying for the farm. The plaintiff brought

his brother, the defendant, to Ward, and informed Ward that his brother was going to assist him. Ward said to the defendant that he regarded the farm as worth $1000 more than he gave for it, and would not sell it to a stranger for the price he would let the defendant have it for. The defendant purchased the farm, and paid down $800, and gave a mortgage for $1600. The plaintiff wished him, Ward, to convey the farm to the defendant.

The farm was sold upon the mortgage some time in September 1863, and Ward conveyed to the defendant in October following. The plaintiff remained alone in possession until January 1864; then the defendant moved into the same house on the premises, with the plaintiff, and both lived there until March 1864, when differences and disputes arose between them, and then the plaintiff was compelled to leave by the defendant, who claimed to own the property.

In anticipation that the defendant was helping the plaintiff in his embarrassments, he, the plaintiff, also, after the arrangement respecting the farm, sold the defendant a large number of cows, fourteen in number, at $15 per head, and twenty-five or thirty tons of hay, at a small price, and took the defendant's note, payable ten years after date, and one year without interest.

After the disputes began between the parties, about their agreements and understandings, both as to the farm and personal property, the plaintiff being straitened in his circumstances, asked the defendant for this amount of surplus money, $83.67, and after some dispute the defendant refunded it; the plaintiff received it, and the parties passed receipts as to all deal of every name and nature.

After about four years from the date of the conveyance from Ward to the defendant, the plaintiff tendered the defendant the amount advanced by him, with interest, and demanded a deed, which the defendant refused, upon which this action was brought. The defendant had con-

Loomis *v.* Loomis.

tinued to possess the premises, and had made some improvements thereon.

*E. H. Benn*, for the plaintiff.

*E. P. Hart*, for the defendant.

*By the Court*, POTTER, J. It is always an agreeable duty for a court, when it is consistent with the rules which must ever control them in their adjudications, to enforce rules of morality; to protect the interests of parties defrauded; and to secure the performance of contracts where confidence has been reposed by one party in the promises of another. Especially is this desirable, when that other is found to have secured to himself advantages by cunning, overreaching and selfishness. But courts do not possess the power to sit in judgment to enforce all obligations that depend upon rules of morality alone; nor to determine what parties ought to do who have neglected, in their own behalf, to observe those precautions which the statutes, for wise purposes, have declared to be indispensable, in transactions relating to the alienation of real estate, and the omission of which observances those statutes declare renders the agreement void.

The statute declares that every contract for the sale of lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the sale is to be made. (1 *R. S.* 135, § 8.) The plaintiff omitted to secure such a contract from the defendant, and the statute is controlling upon the court. It was passed to teach parties the wisdom of obedience to its provisions, and to avoid fraud and perjuries in relation to parol contracts. The frailty of human memory, and the promptings of self-interest were found to be danger-

ous temptations to the commission of frauds and other crimes, and this statute was intended to protect against them. Courts have pronounced it wise, and they could not, if they would, disregard its teachings.

The plaintiff, at the time of this agreement, had no title or interest in the property in question, and there was no legal consideration received from him, for the promise made by the defendant, and this is another difficulty thrown in his way by the statute of frauds. There was no part performance of the agreement which can be enforced in equity. The use of the $83.67 to aid the defendant in the first payment, is not sufficient for that purpose; and if it could have been, by some evidence in the case tending to that end, such evidence was destroyed by the repayment of that sum by the defendant to the plaintiff, and the acceptance of it by the latter, and a receipt in full of all demands given; thereby waiving any such claim, more than three years before the action was brought.

There could be no express trust in the case, for the reasons that the plaintiff had no estate to put in trust, except the $83.67, and which he afterwards received back before suit brought; and because there was no writing to make a valid trust. (2 *R. S.* 134, § 6.) Nor could there have been a resulting trust, according to the provisions of the statute. (1 *R. S.* 728, §§ 51, 54.) No valuable consideration was paid by the plaintiff, as before shown, and the conveyance was absolute upon its face. It was in the form which the parties agreed upon, and therefore could not have been a mortgage, and in this particular there was no fraud. (*Cook* v. *Eaton,* 16 *Barb.* 439.) Indeed, the plaintiff had not, in law, any estate to mortgage.

With all disposition to discountenance falsehood and dishonor, and to grant relief in all cases of breach of con-

---

fidence, the more ungrateful when committed by a rela-
tive, in whom the confidence has been reposed, I do not
see, in this case, how this court by the rules of law or
equity, can grant relief. I think the judgment must be
affirmed.

Judgment affirmed.

[THIRD DEPARTMENT, GENERAL TERM, at Binghamton, June 6, 1871.
*Miller*, P. J., and *Potter* and *Parker*, Justices.]