CHARLES HAGEDORN, Appellant, *v.* MAX LANG, Respondent.

*Auction sale of real estate — signature of the terms of sale by the vendor before the sale, is a sufficient compliance with the Statute of Frauds — such memorandum is not the final instrument.*

Where an auctioneer and a vendor of real property, just before the sale thereof at auction, sign the terms of sale with a poster attached thereto containing separate diagrams of the parcels to be sold, and the auctioneer reads them to the assembled buyers, and at the time of knocking down one of the parcels makes on such parcel, as laid out on the diagram then before him on the stand, a pencil memorandum of the amount bid and of the name of the purchaser, there is a sufficient compliance with the Statute of Frauds, and the fact that the terms of the sale were signed by the vendor before the sale does not impair its validity.

The memorandum to be subscribed by the party by whom a sale is to be made is not the final instrument, but only a paper containing the terms of the transferring instrument thereafter to be made.

APPEAL by the plaintiff, Charles Hagedorn, from a judgment of the County Court of Kings county in favor of the defendant, entered in the office of the clerk of the county of Kings on the 30th day of March, 1898, upon the dismissal of his complaint by direction of the court after a trial before the court and a jury.

*P. E. Callahan,* for the appellant.

*Josiah T. Marean,* for the respondent

GOODRICH, P. J.:

The only question involved in this appeal is whether there was a contract for the sale of real estate, or a note or memorandum thereof in writing.

Mr. Brumley, as auctioneer, had advertised for sale at auction, on April 20, 1898, at the Real Estate Exchange in the borough of Brooklyn, four parcels of real property, among them the premises in question, No. 625 Prospect place, Brooklyn. A poster had been circulated which contained separate diagrams of the four parcels. The auctioneer testified that just before the sale he and the plaintiff, who was the vendor of the property, signed the terms of sale with the poster attached thereto; that these terms were laid upon

the stand in front of him and were read to the assembled buyers; that at the time of knocking down the property he wrote on the parcel in question, as laid out on the diagram attached to the terms of sale, then and there before him on the stand, the pencil memoranda " 2425 " and " Mr. Lang ; " " that $2,425 was the bid made by Mr. Lang." There appears a similar pencil entry upon the diagram of another one of the four parcels, " $6,575 E. T. Martin." No entries were made as to the other two parcels.

The original terms of sale were made an exhibit, and were presented on the argument of the appeal. The first page contains the terms of sale and is subscribed, " Chas. Hagedorn, Vendor. Jas. A. Brumley, Auctioneer." There is in this exhibit a second and separate page of the terms of sale not appearing in the record, on which are four printed blanks called " Memoranda of Purchase," evidently intended to be signed by the purchasers at the sale. No one of them is signed by the plaintiff, the defendant or the auctioneer.

The sole question which arises on this appeal is whether the poster containing the pencil entry, taken in connection with the terms of sale prepared and signed by the vendor and auctioneer just before the sale, is a sufficient compliance with the statute, which reads as follows :

" § 8. Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made." (2 R. S. [9th ed.] 1885.)

" § 9. Every instrument required to be subscribed by any party, under the last preceding section, may be subscribed by the agent of such party lawfully authorised."

The purpose of the Statute of Frauds is sufficiently indicated by its title. It is a statute against frauds. It was designed to prevent litigation over oral agreements, where the terms are always dependent upon the uncertain and varying memory of witnesses. This evil was to be remedied by the reduction of the terms of the contract to writing, so that the parties might not misunderstand the particulars of the contract which they were making ; that no one might

be induced to enter a court of justice to vex the peace of his opponent without clear and definite evidence of the terms of the contract which formed the ground of action, equally accessible to both parties and to the court; and that perjury might not be invited to sustain a claim which never had any real existence.

In *Penniman* v. *Hartshorn* (13 Mass. 87, 90), a similar action, the court, Parker, Ch. J., writing, stated the object of the statute to be " that the bargain shall be proved by writing, and not by parol, in order that purchasers shall not be caught up on loose conversation, or that the proof of the contract should not rest upon the recollection or integrity of witnesses."

In *Smith* v. *Surman* (9 B. & C. 561, 571) Littledale, J., said: " The intention of the Legislature in making the statute in question, appears by the preamble to have been to prevent fraudulent practices, commonly endeavored to be upheld by perjury and subornation of perjury ; and for that purpose, in order to prevent them, it requires that the terms of contracts shall be reduced into writing, or that some other requisite should be complied with to show manifestly that the contract was completed."   In the same case Bayley, J., said (p. 569): " The object of the statute was that the note in writing should exclude all doubt as to the terms of the contract."

Mr. Greenleaf in his work on Evidence (Vol. 1 [15th ed.], 358) says : " The rules of evidence contained in this celebrated statute are calculated for the exclusion of perjury, by requiring, in the cases therein mentioned, some *more satisfactory and convincing* testimony than mere oral evidence affords."

With this object of the statute thus plainly and authoritatively announced, it is evident that this case is one where all the terms of the contract appear in the memorandum of the vendor and auctioneer, so that the mischiefs which the Statute of Frauds was designed to prevent can have no existence.

The learned counsel for the respondent contends that the case is not taken out of the statute because the signature was made before the sale, and that the intention of such signature was simply to express the terms upon which the sale was to be made and not an intention to express the assent of the vendor to the sale when it should be made; that there should have been another signature after the sale, to show that the vendor assented to the defendant's

bid and then and there agreed to sell him the property according to the prescribed terms. We think, however, that the entry of the purchaser's name and the amount of his bid by the auctioneer upon the diagram annexed to the terms of sale, which had been signed by the vendor just before the sale and which were present at the sale, made this memorandum and the terms of sale taken together a complete note or memorandum signed by the vendor, which is sufficient to meet the requirements of the statute.

It will be observed that the statute says that the memorandum must be subscribed by the party by whom the lease or sale *is to be made*, thus indicating clearly that the memorandum is not the final instrument but only a paper containing the terms of the transferring instrument thereafter to be made.

In *Coddington* v. *Goddard* (82 Mass. [16 Gray] 436, 444) BIGELOW, Ch. J., writing the opinion, said : " Nor is it at all material that the names should be written at the bottom of the memorandum. It is sufficient if the names of the principals are inserted in such form and manner as to indicate that it is their contract, by which one agrees to sell and the other to buy the goods or merchandise specified, upon the terms therein expressed. It is the substance, and not the form, of the memorandum, which the law regards. The great purpose of the statute is answered, if the names of the parties and the terms of the contract of sale are authenticated by written evidence, and do not rest in parol proof."

In *Parkhurst* v. *Van Cortlandt* (1 Johns. Ch. 273, 281) Chancellor KENT said : " I am warranted in considering it as a settled principle, that, if the court cannot ascertain, with reasonable certainty, the terms of the agreement, from the writing or for (*sic*) some other paper to which it refers, the writing does not take the case out of the statute."

In *Mentz* v. *Newwitter* (122 N. Y. 491), a case of real estate at auction, the court held the essentials to be, the subject-matter of the sale, the terms and the names or a description of the parties, but decided that there was no valid contract, as the memorandum, though signed by the auctioneer, did not contain the name of the vendor. This action was brought against the purchaser. The court said (p. 498) : " The memorandum in suit failed to state the name of the vendor or to give any description by which he or she could

be identified, and this omission was fatal. In the potent language of the statute the contract was void."

The case of *Price* v. *Durin* (56 Barb. 647) has never been questioned, so far as I can ascertain. It was a case where there was a sale of personal property at auction continuing two days. Before the sale commenced, a memorandum was made in the auctioneer's book, as follows:

"April 5th, 1866. Memorandum of auction sale, on account of Milton S. Price, of boots and shoes, commencing April 5th, 1866. Terms, 90 days, bank note, approved paper, names of purchasers and lots struck off to each, as noted as hereafter following.

"JESSE BUTLER, *Auctioneer.*

"PER W. STITT, *Clerk.*"

The sale continued through the day, and Stitt, the auctioneer's clerk, at the time of each sale, in the presence of and under the direction of the auctioneer, entered in the book under the above memorandum the name of each purchaser, the number and kind of articles sold and the price. At the end of each day the memorandum was signed by the auctioneer's clerk. The contention was made that a memorandum should have been made as often as a parcel of goods was sold, and that the entry which was made at the sale of each parcel, together with the head memorandum, was not sufficient. At this time the Revised Statutes (3 R. S. [5th ed.] 222, § 4) provided that whenever goods were sold at auction, in order to relieve the sale from the operation of the Statute of Frauds, "the auctioneer shall at the time of sale enter in a sale book a memorandum specifying the nature and price of the property sold, the terms of the sale, the name of the purchaser and the name of the person on whose account the sale is made; such memorandum shall be deemed a note of the contract of sale within the meaning" of the statute relative to contracts for the sale of personal property, which is the same as that now in force and which requires the memorandum to be *subscribed* by the parties to be charged therewith. The court said (pp. 650, 651): "Several authorities are cited by the counsel in support of his proposition, but it is enough to say of them that they were each cases of an auction sale of a single

article. * * * . I have no doubt that the general memorandum, entered on the 5th of April, applied to each of the sales on both days, and that the other entries made by Stitt at the close of the sale of each parcel, under the direction and in the presence of the auctioneer, was a sufficient compliance with the statute to make the sale valid."

It will be observed that the statute under consideration in that case, like the statute under consideration in this case, required the entry to be made at " the time of sale " and to be *subscribed* by the parties. I think the reasoning of this case is applicable to the case at bar. The statute made it necessary for the auctioneer, " at the time of sale," to make his entry. A part of such entry was made before the sale commenced, and part of it, not when each sale was made, but at the end of the day's sale, and the court construed both entries as making together a complete memorandum. It is familiar doctrine that instruments made at the same time are to be construed together. Mr. Greenleaf says : " It is sufficient, if the contract can be *plainly made out, in all its terms, from any writings* of the party, or even from his *correspondence.* * * * For the policy of the law is to prevent fraud and perjury, by taking all the enumerated transactions entirely out of the reach of any verbal testimony whatever. Nor is the *place of signature* material. It is sufficient if the vendor's name be printed in a bill of parcels * * *." (1 Greenl. Ev. [15th ed.] 363, 364.)

We think that the entries on the diagram form a component part of the terms of sale, and that, the vendor having signed the terms of sale, being present at the sale and knowing of the sale to Mr. Lang, his signature to the terms of sale, with the subsequent writing of the purchaser's name and amount of bid on the diagram attached thereto, is a sufficient compliance with the statute.

The judgment should be reversed and a new trial granted

All concurred.

Judgment reversed and new trial granted, costs to abide the event.