S. W. STRAUS & Co., INCORPORATED, Respondent, *v.* JACOB M. FELSON and Others, Appellants.

First Department, April 30, 1926.

**Frauds, Statute of** — action on oral agreement to have corporation, to be thereafter organized, execute and deliver mortgage — contract to give mortgage is contract for sale of interest in land under Real Property Law, § 259 — said agreement is unenforcible.

An agreement to give a mortgage on real property is a contract for the sale of an interest therein within the meaning of section 259 of the Real Property Law providing that in order to be valid such a contract or some note or memorandum thereof expressing the consideration must be in writing, subscribed by the grantor or lessor or his lawfully authorized agent.

Accordingly, an oral agreement entered into by the defendants whereby they agreed that in consideration of a loan to be made by the plaintiff to a corporation to be thereafter organized, the defendants would cause the corporation to take said loan, and issue bonds therefor, and execute a first mortgage on premises as security for the bonds issued, is within the Statute of Frauds and is unenforcible.

APPEAL by the defendants, Jacob M. Felson and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New

York on the 12th day of November, 1925, denying defendants' motion to dismiss the first cause of action set forth in the second amended complaint, made under rules 106 and 107 of the Rules of Civil Practice, upon the ground that the contract pleaded is unenforcible under the Statute of Frauds.

*Albert Mannheimer* [*I. L. Broadwin* of counsel; *Victor A. Pascal* with him on the brief], for the appellants.

*Nicholas R. Jones* [*F. D. Higson* of counsel], for the respondent.

FINCH, J. The question involved herein is whether the first cause of action set forth in the second amended complaint is enforcible under the Statute of Frauds. By said cause of action it is alleged as follows:

" I. That on or about the fourth day of August, 1924, in the City of New York, plaintiff and defendants entered into an agreement whereby it was mutually agreed that plaintiff should make a loan of eight hundred thousand dollars ($800,000) to a corporation then organized, or thereafter to be organized, and that defendants should cause said corporation to take said loan, the proceeds thereof to be used in whole or in part for the erection of an apartment building on the premises known as 139–141–143–145 West 86th Street, in the Borough of Manhattan, City, County and State of New York. It was further mutually agreed that, to evidence said loan, defendants should cause said corporation to execute and deliver to plaintiff its coupon bonds in the amount of said loan, secured by a first mortgage upon said premises; that defendants should cause said corporation to be forthwith organized, if said corporation was not then in existence, and should convey, or cause to be conveyed, to said corporation the aforesaid premises, and that defendants should cause said corporation to pay to plaintiff as a commission or discount for making said loan, and to cover the expenses incurred by plaintiff in connection therewith, the sum of Sixty-eight thousand dollars ($68,000). It was further mutually agreed that said loan should be closed, and said bonds delivered, on the first day of October, 1924, at the place of business of the plaintiff at No. 565 Fifth Avenue in the said City of New York.

" That in the event that said defendants should fail to perform the agreement as aforesaid, there should be paid to plaintiff as and for liquidated damages the sum of Sixteen thousand dollars ($16,000).

" II. That plaintiff duly performed all of the conditions on its part; and, at the time and place appointed, was ready, able and willing to make said loan as aforesaid, and to accept said coupon

bonds, and plaintiff duly notified defendants thereof, and duly demanded that said defendants cause said corporation to appear and to take said loan and to deliver said bonds and mortgage to plaintiff, as aforesaid.

" III. That defendants neglected to cause said corporation to appear at the time and place appointed to accept said loan and to execute and deliver to plaintiff the bonds and mortgage as aforesaid, and thereafter notified plaintiff that they did not intend to carry out and perform their aforesaid agreement, to the damage of the plaintiff in the sum of Sixteen thousand dollars ($16,000)."

A bill of particulars was served by the plaintiff, which shows that the agreement referred to in the said cause of action was an oral agreement. The defendants moved on the complaint and the bill of particulars to dismiss the complaint, upon the ground that the Statute of Frauds was a bar to the enforcement of such an oral agreement.

From the above allegations of the first cause of action it appears that the undertaking of the defendants was in effect to procure a corporation to give a mortgage to the plaintiff, to secure a loan to be made by the latter. It is well settled that a contract to give a mortgage is a contract for the sale of an interest in real property within the meaning of section 259 of the Real Property Law, providing that, in order to be valid, such a contract or some note or memorandum thereof expressing the consideration must be in writing, subscribed by the grantor or lessor, or by his lawfully authorized agent. As was said by CARDOZO, J., in *Sleeth* v. *Sampson* (237 N. Y. 69, 72): " One who promises to make another the owner of a lien or charge upon land, promises to make him the owner of an interest in land, and this is equivalent in effect to a promise to sell him such an interest."

The fact that in the case at bar the promise was to cause another to convey such an interest, rather than to convey the same directly, is no reason why a different rule should be applied, as in each case the ultimate thing to be done is the same, namely, to transfer an interest in land. The identical question here presented has been passed upon in a number of foreign jurisdictions, and it has consistently been held that such a contract was within the prohibition of the Statute of Frauds. (*Allen* v. *Richard,* 83 Mo. 55, 59; *Meyer* v. *Spink Co.,* 76 Ind. App. 318.) In *Allen* v. *Richard* (*supra*) it was said: " I think it will be found pretty generally held by the courts that the undertaking of any one to procure for another one an interest in or conveyance of a third person's lands is within the Statute of Frauds, unless evidenced by written memorandum.

28

*Mather* v. *Scoles,* 35 Ind. 2; *Martin* v. *Wharton,* 38 Ala. 637; *Bryan* v. *Jamison,* 7 Mo. 107; *Campbell* v. *Taul,* 3 Yerg. [11 Tenn.] 548; *Horsey* v. *Graham,* L. R. 5 C. P. 9. I do not perceive how this conclusion can be affected by the fact that one of the parties is agent of the other for hire. I take it that it would be against the spirit and policy of the statute to relieve a person from all oral obligations to convey or create an interest in his own lands, but hold him liable on similar undertakings to create an interest in another person's lands."

While the New York statute differs somewhat from the usual phraseology of the Statute of Frauds in that it employs the words " lessor or grantor " instead of " party to be charged," when the purpose of the statute is considered, it would seem to be immaterial whether the promisor is himself to convey or whether he is to cause another so to do. The purpose of the act is to prevent litigation over oral agreements in relation to real property. In McKinney's Consolidated Laws of New York (Book 49, p. 299, Real Prop. Law, § 259, note) the purpose of the act is stated as follows: " The purpose of the section was to prevent litigation over oral agreements, where the terms are always dependent upon the uncertain and varying memory of witnesses. This evil was to be remedied by the reduction of the terms of the contract to writing, so that the parties might not misunderstand the particulars of the contract which they were making; that no one might be induced to enter a court of justice to vex the peace of his opponent without clear and definite evidence of the terms of the contract which formed the ground of action, equally accessible to both parties and to the court; and that perjury might not be invited to sustain a claim which never had any real existence. *Hagedorn* v. *Lang,* (1898) 34 App. Div. 117; 54 N. Y. S. 602; *Loomis* v. *Loomis,* (1871) 60 Barb. 22."

The statute is to be liberally construed, having in mind the purpose which it was designed to accomplish. An indication of this is to be found in the language of CARDOZO, J., in the case of *Sleeth* v. *Sampson (supra),* where, although the statute referred in terms to a contract to lease or sell, it was held to apply to a contract to give a mortgage. Judge CARDOZO said: " No doubt the word ' sale,' when applied to such a transaction, is inexact and inappropriate. Our present statute comes to us by descent from the English statute (29 Car. II, c. 3, § 4), which speaks of ' any contract or sale of lands, tenements or hereditaments or any interest in or concerning them.' The change of phraseology has not worked a change of meaning."

What is contracted for in the case at bar is an interest in lands, and this falls within the ban of the statute unless in writing.

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion to dismiss the first cause of action granted, with ten dollars costs.

CLARKE, P. J., DOWLING, McAVOY and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.