·No. 14,067.

## LOWMAN v. SHEETS.

SPECIAL VERDICT.—*Request for Written Instruction.*—It is not error for the court to grant a request for a special verdict, which is made after the party preferring the request has asked the court to instruct the jury in writing, and after the questions of law to be embraced in the instructions have been discussed, as the court has the right to require the jury to return a special verdict without any request from either party.

CONTRACT.—*Statute of Frauds.*—*Contracts not to be Performed within One Year.* —*Performance by One of the Parties.*—The statute prohibiting the making of oral contracts not to be performed within one year, has no application to contracts which have been fully performed by one of the parties.

SAME.—*Lease.*—*Three Years or Under.*—A parol lease for a period not exceeding three years is not within the statute of frauds. Section 4904, R. S. 1881.

SAME.—A contract within the statute of frauds is not void, but voidable.

SAME.—*Brood Mares.*—*Keeping of.*—*Postponement of Settlement.*—A parol agreement made in 1877 by the vendee to keep mares for breeding purposes until 1891, each party furnishing a part of the feed, with a postponement of a settlement to the latter date, is within the statute of frauds.

SAME.—*Sale.*—*Delivery of Possession to Vendee.*—A parol contract of sale of a one-half interest in a certain number of mares, where the possession is delivered to the vendee, is not within the statute of frauds.

SAME.—Where there are a number of contracts made at the same time, and are parts of the same transaction, some of which are within the statute of frauds and the others not, and they are of such a nature that they can reasonably be considered as separate, those which are not within the statute will be enforced though the others may fall within the statute.

PARTNERSHIP.—*Property Kept for Carrying on the Business.*—*Sale of.*—Where the property of a partnership is kept for the purpose of carrying on a particular business, neither partner has the right to sell the entire property, the power of sale being confined to those things kept for sale.

From the Benton Circuit Court.

*W. D. Wallace, S. P. Baird* and *U. Z. Wiley,* for appellant.

*E. P. Hammond, M. W. Walker, D. Fraser, I. H. Phares* and *W. B. Austin,* for appellee.

COFFEY, J.—This was an action by the appellant against the appellee to recover the possession of forty brood mares described in the complaint. The complaint alleges that he is the owner and entitled to the possession of the property, and that the appellee unlawfully detains the possession thereof from him.

The cause was submitted to a jury, who returned the following special verdict:

"STATE OF INDIANA, } ss.:
  BENTON COUNTY.    }

"Benton Circuit Court, September term, 1887.

"JAMES A. LOWMAN }
        vs.       } No. 1032.
FREDERICK SHEETS.  }

"We, the jury, having been instructed to return a special verdict herein, find the facts to be as follows:

"About the 8th day of April, 1887, one Leroy Templeton was the absolute owner of the forty mares in controversy in this case, and on that day bargained to the defendant Sheets a one-half interest in said mares, at and for the price of forty-five dollars for each of said mares, said mares in said bargain being valued at ninety dollars each.

"By the terms of said sale said defendant was to have possession and care and control of said mares, and was to keep the same until March 1st, 1891.

"Said Templeton was to furnish pasture for the same until October 1st, 1887, after which the feed for said animals was to be furnished at an equal expense of said Templeton and said defendant.

"Said defendant, from the time of making said bargain, was to look after and have the control and possession of said mares in the pasture furnished by said Templeton, up to October 1st, 1887, and was thereafter to continue to feed and take care of said animals, and to have the possession of the same. Said Sheets was to pay said Templeton interest at

seven per cent. on the purchase-price of said mares from October 1st, 1887, and was to have the option to pay said purchase-money when he saw proper on or before March 1st, 1891.   On March 1st, 1891, the interest of said parties in said mares, and the proceeds thereof, were to be equal, after accounting to each party for his portion of the expense, and also after payment to Templeton by the defendant of the purchase-price for the one-half interest thereof, with interest, if the same had not been previously paid.

"By the terms of said bargain, said mares were to be kept exclusively for breeding purposes, and were not to be worked or sold, broke or traded by either party prior to March 1st, 1891, except by consent.

"Said bargain was not in writing.

"Pursuant to said contract said Templeton, on the same day that it was made, to wit, about April 8th, 1887, delivered possession of said mares to said Sheets, who remained in the possession and care of the same, having the same in a pasture furnished by said Templeton, in said county, until the 16th day of June, 1887, when said Templeton and said plaintiff, without the knowledge or consent of said Sheets, took said mares from said pasture and placed them in a pasture of the plaintiff's, about half a mile distant from where they were taken.

"The possession of said property was taken by said Lowman under a sale made to him by said Templeton, on the 16th day of June, 1887, on which day said Templeton sold said property to said Lowman for the sum of thirty-four hundred dollars, to be paid by said Lowman in six months after said date, which was evidenced by a promissory note, executed by plaintiff to Templeton, payable in a bank in this State, which said note is still held by said Templeton, and is still wholly unpaid.

"Said Sheets had no notice, knowledge or information of said sale by Templeton to the plaintiff until after the same was made, and the possession of said property taken by the

plaintiff as aforesaid ; nor did he ever afterwards consent to the same.

"On the 22d day of June, 1887, said defendant, without objection or resistance, took said mares from plaintiff's pasture, where plaintiff had put them, as aforesaid, and put them in his, said defendant's, own pasture, on Fowler & Van Natta's farm in said county, the same being about four miles from the pasture where said animals were when taken by the plaintiff as aforesaid, and about the same distance from the plaintiff's said pasture from which they were taken by the defendant as aforesaid.

"While said animals were in the possession of the defendant as aforesaid, said plaintiff, on the 22d day of June, 1887, before the commencement of this action, demanded said property of said defendant, but said defendant refused to deliver him the possession thereof.

"Said plaintiff on the same day commenced this action, and upon a writ of replevin herein issued and upon the plaintiff's undertaking, approved by the sheriff, said sheriff, on said writ, delivered said property to the plaintiff who, by virtue of said delivery of possession, has since retained and is now in the possession of said property.

"Said property is now of the aggregate value of $3,400. At the same time of making the sale of a half interest in said mares to said Sheets, said defendant and said Templeton entered into a bargain whereby said Templeton was to lease to said Sheets 300 acres of real estate, owned by said Templeton, in said county, for the term of three years, to commence on the 1st day of March, 1888.

"Said lands were the north half of each of two adjoining sections owned by said Templeton, one lying immediately east of the other, and the southwest quarter of said east section—the precise location of said lands so leased was well understood and agreed to by the parties at the time of making said bargain.

"By the terms of said bargain said land was to be culti-

vated in corn, oats, pasture and meadow, as said Sheets might determine, and as rent for the same said Sheets was to deliver to said Templeton, on said premises, one-third of the corn raised thereon in the crib, one-third of the oats in the bin, and three-fifths of the hay in the stack, and to pay $2.50 per acre for all the pasture except thirty acres, for which no charge was to be made.

" Said Templeton was, before March 1st, 1888, to move a house from a designated part of said premises to another designated part thereof, and to put the same in a tenantable condition, at an expense of not exceeding $300.

"At the same time that Templeton sold a half interest in said mares, as aforesaid, and at the same time that he leased said defendant said real estate as aforesaid, said Templeton and defendant entered into a bargain whereby it was agreed, by and between them, that such portions of the hay and grain as should be raised upon said leased premises by said defendant, as the parties should determine, should be fed to stock, which stock was to be purchased from year to year by said parties, with money to be borrowed by them jointly; and to be taken care of by said defendant on said premises, the expense of feeding the same to be borne by Templeton and the defendant equally, and the net profits thereof to be divided between them equally.

" Said mares were also to be kept on said leased premises after March 1st, 1888.

" None of said bargains were in writing.

" Said sale of a half interest in said mares, by said Templeton to said defendant, would not have been made if said Templeton had not at the same time leased said defendant said real estate as aforesaid ; but said sale of said half interest in said mares to said defendant and said lease of said real estate were in nowise dependent upon said other contract, and would have been made though said other contract had not been made.

" If, upon the foregoing facts, the law is with the defend-

Lowman *v.* Sheets.

ant, then we find for the defendant, that the property in controversy should be returned to him, or if return thereof can not be had, that he should have judgment for one-half the value of the mares described in the complaint.

"THOMAS S. LAMB, Foreman.

"But if, upon the foregoing facts, the law is with the plaintiff, then we find for the plaintiff, that he keep and retain possession of the property in controversy, and that he recover from the defendant one cent for his damages herein.

"THOMAS S. LAMB, Foreman."

The appellant moved the court for judgment in his favor, on the special verdict, which was overruled. The court sustained a motion by the appellee for judgment in his favor on this verdict, and rendered judgment for a return of the property.

The errors assigned are:

1st. That the court erred in overruling appellant's motion for judgment in his favor on the special verdict of the jury.

2d. That the court erred in overruling the appellant's motion for a *venire de novo.*

3d. That the court erred in overruling the appellant's motion for a new trial.

4th. That the court erred in overruling the appellant's motion to arrest the judgment.

5th. That the court erred in sustaining the appellee's motion for judgment in his favor on the special verdict of the jury.

The first objection with which we are met is, that the court erred in directing the jury to return a special verdict.

It appears by the record that after the close of the evidence in the cause, each of the parties requested the court to instruct the jury in writing, and to indicate before argument what instruction would be given. After the close of the argument in the effort to settle on the instruction, but before the court had announced its conclusion, the appellee re-

quested that the jury be required to return a special verdict, which request was granted.

It is claimed by the appellant that by requesting the court to instruct the jury in writing, and by entering upon the discussion of the questions of law to be embraced in such instructions, the appellee waived his right to a special verdict, and that the court, for that reason, erred in granting his request.

It is unnecessary to decide whether it would have been error in the court to refuse the request of the appellee for a special verdict, coming at the time it did, but it was certainly not error to grant it. Indeed, the court had the right to require the jury to return a special verdict, without any request from either party. *Weatherly* v. *Higgins*, 6 Ind. 73.

It is earnestly contended by the appellant, in an able brief, that the contract found by the jury is within the statute of frauds, and that it is, therefore, void.

It is found by the jury, as we understand their verdict, that the contract to purchase stock, to be fed on the farm, has no connection with the other agreements between the parties, and, hence, that agreement does not call for any consideration at our hands. The contracts under which the question for decision arises are :

*First.* The contract by which Templeton sold to the appellee a one-half interest in the property in controversy for an agreed price, and delivered to him the possession.

*Second.* The contract by which Templeton leased to the appellee the land, described in the verdict, for the term of three years, and

*Third.* The contract by the terms of which the appellee was to keep the mares in controversy and breed them for a period of more than one year.

The sale and delivery of a one-half interest in the mares in controversy is not within the statute of frauds, because it was fully executed by Templeton.

The statute prohibiting the making of contracts not to be performed within one year, has no application to contracts which have been fully performed by one of the parties. Browne Statute of Frauds, section 287 ; *Donellan* v. *Read,* 3 Barn. & Ad. 899 ; *Smith* v. *Neale,* 2 C. B. N. S. 67 ; *Holbrook* v. *Armstrong,* 10 Maine, 31 ; *Bell* v. *Hewitt,* 24 Ind. 280 ; *Wolke* v. *Fleming,* 103 Ind. 105.

Nor is the lease of the land within the statute of frauds, as the statute expressly exempts leases for a period not exceeding three years. Section 4904, R. S. 1881.

This is not an action by either party to enforce the contract. A contract within the statute of frauds is not void, but merely voidable. *Schierman* v. *Beckett,* 88 Ind. 52 ; *Day* v. *Wilson,* 83 Ind. 463.

In the latter case cited it was held that where a party had paid money on a parol contract for the purchase of land, the money could not be recovered back unless the vendor refused to convey.

It being settled that the contract for the sale of the property in controversy was not within the statute of frauds, and that it vested the title to the undivided one-half of the property in the appellee, the question arises as to what is the effect of the repudiation of the agreement to keep the property for a period of more than one year for breeding purposes by Templeton, when the appellee is ready and willing to carry out the contract on his part.

We think, for the purposes of this case at least, that it must be held that the agreement to keep the mares for breeding purposes until 1891, each party furnishing a part of the feed, with postponement of a settlement to that date, is within the statute of frauds, unless it be held that such contract creates a partnership. *Stephenson* v. *Arnold,* 89 Ind. 426 ; *Wolke* v. *Fleming, supra.*

If the contract between the parties created a partnership, then, according to some of the authorities, it is not within the statute. Wood Statute of Frauds, p. 500, section 281.

But, conceding that the statute applies to this contract, did the repudiation of it by Templeton divest the title of the appellee to the property in controversy ?

We are of the opinion that the contract to keep the mares involved in this suit until 1891, is so far separated from and independent of the other contracts found by the jury, that the repudiation of it by the appellant can not deprive the appellee of the benefits he has acquired under the other contracts which are not within the statute of frauds, without his consent.

Where there are a number of contracts, made at the same time, and as parts of the same transaction, some of which are within the statute of frauds and the others not, and they are of such a nature that they can reasonably be considered as separate, those which are not within the statute will be enforced though the others may fall within the statute. Browne Statute of Frauds, section 143, *et seq.*

In such cases it is not so important to ascertain whether the one contract would not have been entered into without the other, as to ascertain whether they are, in their nature, separate and distinct.

In this case if the contract had been for the leasing of the land described in the verdict for the period of three years, coupled with an agreement on the part of Templeton to build a house on the premises during the second year, it could not be reasonably contended that Templeton could defeat the appellee's tenancy by a refusal to erect the house, though it should plainly appear that the one contract would not have been made without the other.

So we think Templeton could not divest the title of the appellee in the mares in controversy by a refusal to carry out the agreement in relation to keeping them until 1891. It is probably true that the appellee could not maintain an action against him for such refusal, but we do not think this fact affects the title which the appellee acquired by a contract which is not affected by the statute of frauds.

Having reached the conclusion that the appellee is the owner of an undivided interest in the property in controversy, it follows that appellant can not maintain this action unless he acquired the whole title to the same by his purchase from Templeton. *Mills* v. *Malott,* 43 Ind. 248; *Lacy* v. *Weaver,* 49 Ind. 373; *Branch* v. *Wiseman,* 51 Ind. 1; *Schenck* v. *Long,* 67 Ind. 579.

It is contended by the appellant that Templeton and appellee were partners, and that, as such, either partner had the right to sell the property owned by the firm, and confer a good title, and that by his purchase from Templeton he acquired the title to the whole of the property in controversy, and has a right to its possession.

We do not deem it necessary to decide whether the contract between the parties was one of partnership or not, as the appellant had no power to sell the entire property, whether it was held as partnership property or otherwise. The partnership, if one existed, was not one in which the parties contemplated a sale of the property here involved, but it was one in which this property was to be kept for the purpose of carrying on a particular business. In such case neither party had the power to sell the entire property. Bates Partnership, section 401; *Hewitt* v. *Sturdevant,* 4 B. Mon. 453; *Cayton* v. *Hardy,* 27 Mo. 536; *Mussey* v. *Holt,* 24 N. H. 248; *Hudson* v. *McKenzie,* 1 E. D. Smith, 358.

Mr. Bates, in his valuable work on Partnerships, in treating this subject in the section above cited, says: "But I have no doubt but that the power of sale must be confined to those things held for sale, and that the scope of the business does not include the sale of property held for the purposes of the business, and to make a profit out of it, and that this only is the true rule."

It follows from what we have said that the court did not err in overruling the motion of the appellant for judgment in his favor on the special verdict of the jury, nor did the

Lowman *v.* Sheets.

court err in sustaining the motion of the appellee for judgment in his favor on said verdict.

It is contended that the special verdict before us does not find on all the issues in the case, and for that reason the court erred in overruling the motion for a *venire de novo*, but we think the verdict covers all the issues presented by the pleadings in the cause, and that it is not subject to the objection urged against it.

The court, over the objection of the appellant, permitted the appellee to prove certain declarations, made by himself, in relation to the ownership of the property in controversy. But these declarations were made while in possession of the property, and under the rule, as settled in the cases of *Bunnell* v. *Studebaker*, 88 Ind. 338, *Kuhns* v. *Gates*, 92 Ind. 66, *McConnell* v. *Hannah*, 96 Ind. 102, and *Creighton* v. *Hoppis*, 99 Ind. 369, they were admissible as part of the *res gestœ*. *Durham* v. *Shannon*, 116 Ind. 403.

Finally, it is contended by the appellant that the verdict of the jury is not supported by the evidence. We have read the evidence carefully, and while it is conflicting there is evidence in the record fairly tending to support the verdict. Its weight was for the jury. We can not disturb the verdict on the weight of the evidence.

We find no error in the record for which the judgment should be reversed.

Judgment affirmed.

Filed March 22, 1890; petition for a rehearing overruled June 20, 1890.