MEYER ET AL. v. E. G. SPINK COMPANY ET AL.

[No. 9,993.   Filed October 31, 1919.   Rehearing denied May 26, 1920.   Petition to transfer dismissed October 5, 1921.]

1.   CONTRACTS.— *Construction.*— *Determination of Intention of Parties.*—*Terms of Contract.*—*Interpretation.*—In the construction of a contract the intention of the parties must be determined by a consideration of the whole contract, and the terms

of the instrument must be understood in their plain, ordinary and popular sense, and when by so considering the contract the intention of the parties can be determined, it must prevail. p. 324.

2. FRAUDS, STATUTE OF.—*Contract.—Performance within a Year.* An agreement to furnish funds to acquire and improve real estate which was to be transferred to a realty holding company to be subsequently incorporated, such agreement containing stipulations imposing obligations and duties upon the persons receiving the funds which were separate and apart from the acts required of the proposed corporation, *held* to be impossible of performance within a year, and hence unenforceable unless in writing, in view of cl. 5, §7462 Burns 1914, §4904 R. S. 1881, providing that no action shall be brought upon any agreement that is not to be performed within one year from the making thereof. p. 325.

3. FRAUDS, STATUTE OF.—*Contract.—Performance within a Year.* A contract for the construction of a building and its operation by a corporation thereafter to be formed, the corporation being obligated to use the proceeds of such operation to pay the indebtedness represented by its preferred stock in annual installments, with the right to make additional payments on stock last maturing, is one which by its terms showed that the parties did not intend it should be performed within one year, and hence was unenforceable unless in writing, in view of cl. 5, §7462 Burns 1914, §4904 R. S. 1881. p. 330.

4. FRAUDS, STATUTE OF.—*Contract to Furnish Money to Buy Land.—Applicability of Statute.*—A contract whereby one party agreed to furnish another with funds with which the other should purchase land and cause it to be conveyed to a corporation to be subsequently formed, the corporation to pay for the land by issuing a stipulated amount of its common stock, is a contract for the sale and conveyance of real estate, which is required by cl. 4, §7462 Burns 1914, §4904 R. S. 1881, to be in writing. p. 334.

From Marion Superior Court (104,704); *W. W. Thornton*, Judge.

Action by Sol Meyer and Sol S. Kiser, partners doing business under the firm name of Meyer and Kiser, against the E. G. Spink Company and another. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

*Charles W. Miller* and *Henry M. Dowling,* for appellants.

*Charles J. Schuh, Ulric Z. Wiley* and *L. H. Van Briggle,* for appellees.

NICHOLS, P. J.—This action, by the appellants against the appellees, was in the Marion Superior Court. It is averred in the first paragraph of the complaint that on or about October 14, 1916, appellants and appellees entered into a contract whereby appellants, for a stipulated commission, agreed to provide the appellees with funds with which to acquire certain real estate located in the city of Indianapolis, Indiana, and erect thereon three apartment buildings. It was stipulated in said agreement that said buildings should be constructed according to plans which appellees were to exhibit to appellants for their approval; that the costs of said improvements would be approximately $124,-000; that appellees would cause to be incorporated a realty company under the laws of the State of Indiana, with a capital stock of $140,000, of which $50,000 should be common stock and $90,000 preferred stock, the latter to bear cumulative dividends at the rate of five and one-half per cent. per year, payable quarterly, and to be redeemed $3,500 per year beginning January 1, 1918, for nine years; the remaining $58,500 to be redeemed on January 1, 1927; that said realty company should have the option to redeem $1,000 of the preferred stock or any multiple thereof at any dividend paying period at 102 per cent. of par plus accrued interest, upon sixty days written notice being given the holders of the preferred stock; that the stock to be redeemed should be selected by lot from that last maturing. Appellees further agreed that the articles of association and certificates of stock of said realty company and all other legal papers incident to the issuance of the capital

stock of said realty company should be in form approved by the attorneys of the appellants. Appellees
further agreed to cause said real estate to be conveyed
to said realty company free of all incumbrances, and
to furnish abstracts showing such title to be a good
merchantable estate in fee simple, together with a survey of said real estate; that in payment of such real
estate there would be issued to such persons as the
appellees might designate, $16,000 of the common stock
of said realty company, and that all of said common
stock would be endorsed in blank and lodged with appellants, together with an irrevocable proxy to vote the
same, so long as any of such preferred stock was outstanding; but that, so long as the said realty company
should not be in default in the performance of any of
its obligations to its preferred stockholders, said appellants were to vote said stock as so requested by the owners thereof, unless to vote said stock as so requested would
cause default in any of said obligations, or would in any
manner injure the security of any of the holders of said
preferred stock. It was further agreed that one share
of common stock of said realty company would be placed
in the name of some person selected by appellants to
qualify him as a member of the board of directors of
said realty company, and that appellants would be permitted to name one of the members of said board so long
as any of such preferred stock was outstanding; and
that so long as any of said preferred stock was outstanding, said realty company would not convey or incumber said real estate without the written consent of
all the preferred stockholders; that said realty company
would not engage in any other business than the owning and operation of said real estate and buildings; that
it would not incur a greater floating indebtedness than
$1,000; that it would pay no salaries to any of its offi-

cers; that it would carry fire insurance to the amount of $90,000, together with reasonable amounts of liability and tornado insurance, all of which insurance would be placed with and held by appellants; that the voting power of said realty company would be vested exclusively in the holders of the common stock, subject to the proxy referred to in said agreement so long as there was no default in any of the conditions of said contract which might prejudice the rights or security of preferred stockholders; that in the event of such default the preferred stockholders were to have equal voting powers with the holders of the common stock. It was further stipulated and agreed that subject to all the conditions of said agreement, the appellants would purchase all the preferred stock of said realty company at a price of $81,000, and appellees agreed that said realty company would sell all the preferred stock to the appellants for said sum. It was agreed that the purchase price of said preferred stock would be placed on special deposit in the Meyer-Kiser Bank to the joint account of said realty company and the appellants to be checked upon solely in the payment of the costs of said improvements; and that before any of such funds should be subject to check, appellees would expend not less than $34,000 of their own funds on said improvement, for which they would be entitled to receive additional common stock at par in said realty company, $9,000 of which should be endorsed in blank and lodged with appellants, together with an irrevocable proxy to vote the same so long as any of said preferred stock was outstanding, subject to the request of the owners thereof, as in the case of the common stock referred to in said agreement; it was further agreed that appellees would furnish evidence and security satisfactory to appellants that the funds on deposit representing such remaining proceeds of the purchase price of said preferred stock,

would fully complete said improvements, free from all liens and claims, to the end that said realty company would own said property when it was completed without any debts whatsoever; and appellants agreed as part of the consideration for such contract, that said Meyer-Kiser Bank would allow interest on the preferred stock so deposited in said bank at the rate of four per cent. per annum on all sums remaining on deposit over five months, and three and one-half per cent. on all sums remaining for a shorter period. It was further agreed that whenever requested by appellants, said realty company would furnish a detailed statement of the monthly earnings and expenses of said realty company and also actual figures of the entire cost of said real estate with all the improvements thereon; all legal steps would be taken under the supervision of counsel named by appellants whose charges, together with all incorporation expenses and carrying charges during the construction of said improvements, the appellees agreed to pay; and that on the incorporation of said realty company, it would adopt said contract so far as the same related to the said realty company.

Appellants were ready at all times, and able and willing to carry out each and every term and condition of the contract by them to be performed; that on October 16, 1916, appellees wrongfully repudiated said contract and all liability thereunder and wrongfully refused to and still refuse to perform any stipulations agreed to by them as aforesaid. Appellants, relying in good faith on said agreement, proceeded to advertise the preferred stock of said realty company, proposed to be issued as aforesaid, and secured a purchaser for $11,800 of par value thereof who was at all times, and is now ready to receive and pay to the appellants said sum for the same; that they would have been able to sell all of the preferred stock at a net profit to themselves of not less

than $9,000 and would have realized further profits of $2,000. There is a demand for judgment in the sum of $11,000.

The second paragraph of the complaint, though on a separate contract from that averred in the first, is similar in character.

To each of these paragraphs demurrers were filed by appellees respectively with a memorandum that the contract was one not to be performed within the year and by its terms could not be performed within the year. There are other memoranda with the demurrers, but this is sufficient for the purposes of this decision.

Section 7462 Burns 1914, §4904 R. S. 1881, in force at the time of the execution of the contract sued upon in the appellant's complaint, which with the foregoing memoranda, is relied upon by appellees to sustain their demurrer, reads as follows: "No action shall be brought in any of the following cases: * * * Upon an agreement that is not to be performed within one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some person thereunto by him lawfully authorized." The contract is not in writing; it is executory in character, no present consideration passing from either one to the other, but the consideration therefor being the mutual promise of each to the other. It is a rule of construction of contracts that the intention of the parties must be determined by consideration of the whole contract, and that the terms of the instrument must be understood in their plain, ordinary and popular sense, and when by application of this general rule, the intention of the parties can be determined, that intention must prevail. *Evansville, etc., R. Co.* v. *Meeds* (1858), 11 Ind. 273.

We must then look to the contract, with the foregoing rule before us to determine what by its terms had been mutually agreed upon. Was it the intention and understanding of the parties that the contract might be performed within the year? They had mutually agreed that appellees should cause to be incorporated a realty company with a capital stock of $140,000, $90,000 of which should be preferred stock, bearing cumulative dividends of five and one-half per cent., payable quarterly, and to be redeemed $3,500 per year beginning January 1, 1918, for nine years, covering a period of time to and including January 1, 1926, the remaining $58,500 of the stock to be redeemed January 1, 1927. There is certainly nothing in this preparation to carry the debt of the company to be organized that indicates that the parties contemplated for a moment that such debt would or might be discharged within the year. There follows a provision for the redemption of $1,000 of the preferred stock or any multiple thereof at any dividend paying time at 102 per cent. upon sixty days notice, the same to be selected by lot from that last maturing. Appellants contend that by this redemption provision, the realty company might have redeemed the whole issue within the year and therefore the contract is not within the statute. But we do not so construe the contract. The option to redeem is confined to stock to be selected by lot from that *last maturing,* and the stock last maturing was the $58,500. Not only is this a reasonable interpretation of the language used, but it is in harmony with the intent of the parties as gathered from the whole contract. The buildings to be erected were three apartment buildings, from the rents of which it is evident that appellees expected to make their payments of the $3,500 installments, and at their option to apply the surplus to the payment of such part of the $58,500 last

maturing as conditions would justify; and in order that appellants might know that there was good faith and proper management of the business, they reserved the right to a detailed statement of the monthly earnings and expenses of the said realty company from time to time.

There is nothing that suggests that either of the parties to the contract contemplated that the realty company would or might, at any time, negotiate any other loan for the purpose of discharging this indebtedness. With this construction of the contract, which we hold to be a reasonable one, it was not possible for the realty company to finally discharge its obligations before January 1, 1926, and therefore the contract, so far as the realty company was concerned, could not be performed within a year. Appellants contend, however, that there is a distinction between the obligations which appellees should perform under the contract, and those which should be performed by the realty company to be organized, and that appellees' contract only goes to the extent of organizing a realty company having certain characteristics, capitalization and privileges, and that this obligation upon appellees' part, together with certain other obligations mentioned by appellants, could each and all of them, be performed within the year. Appellants say that certain performances by the realty company, such as the payment of dividends upon stocks, etc., might extend through many years, but these were incidental and did not constitute any part of the appellees' performance. They argue, in effect, that appellees would have performed their contract by causing a real estate company to be incorporated within a year, and the mere fact that this results in the creation of a relationship or contract which cannot be discharged until after the year, does not bring the contract within the statute, since it is the original performance which

the statute has in mind, and not that of the resulting relationship or agreement. They cite as an authority upon this proposition, *Shakespeare* v. *Alba* (1884), 76 Ala. 351, which was a case in which the defendant entered into an oral agreement to execute a five-year lease and it was objected that the contract violated the statute of frauds. In that case, the court held that the agreement sought to be specifically performed was the execution of a lease for a term of five years, and that the duration of the lease whether for one or for twenty years, does not touch the question as to the time within which it was to be executed, and that when the lease is made in writing and properly signed this would, when followed by delivery of the instrument be a full and complete execution of the lessor's agreement. We get the force of appellants' argument, and though at first impression it seems plausible, yet, if it prevails it must result in permitting parties to such oral contracts as there involved, and to the contract involved in this controversy, to accomplish in an indirect way that which they could not accomplish directly. But we do not need to determine this question, for by the contract here involved, there were other obligations which the parties assumed than that of organizing a realty company, and which could not be performed within the year. We have already held that the realty company could not perform its obligations, and discharge its indebtedness before January 1, 1926. By their contract, the parties agreed that in payment for the real estate there should be issued to such persons as appellees might designate, $16,000 of the common stock of the said realty company and that all common stock should be endorsed in blank, and lodged with the appellants, together with an irrevocable proxy to vote the same so long as any of the preferred stock was outstanding; but that so long as said realty company should not be in default of the

performance of its obligations to its preferred stock-holders, appellants were to vote such stock as requested by the owners thereof, unless to vote the same as so requested, would cause default in any of said obligations, or would in any manner injure the security of any of the holders of said preferred stock. It was further agreed between the appellants and the appellees that one share of the common stock in said realty company would be placed in the name of some person selected by appellants to qualify him as a member of the board of directors of said realty company, and that appellants would be permitted to name one of the members of said board so long as any of such preferred stock was outstanding, that so long as any of said preferred stock was outstanding, said realty company would not convey or incumber said real estate without the written consent of all the preferred stockholders; that said realty company would not engage in any other business than the owning and operation of said real estate and buildings, and that it would not incur a greater floating indebtedness than $1,000; that it would pay no salaries to any of its officers; that it would carry fire insurance to the amount of $90,000 with tornado insurance, all of which insurance would be placed and held by appellants. It was further agreed by the appellants and the appellees that whenever requested by the appellants, the realty company would furnish the appellants a detailed statement of the monthly earnings and expenses of said realty company. All of these obligations were obligations which were assumed by the appellants and appellees, and were obligations which could not be finally discharged until all of the preferred stock was finally redeemed. It is true that some of the acts to be performed as enumerated above were to be performed by the realty company, but it must be noted

that the appellees obligated themselves to see that the realty company not only adopted the contract so far as it related to the company, but that it would perform its obligations aforesaid.

Appellants assert that all of their obligations could be performed within the year, and then say that the overwhelming weight of authority is to the effect that where an oral contract can be performed within the year by one of the parties, it is not within the statute, although complete performance within the year by both parties is not possible. They cite to sustain this proposition, *Houghton* v. *Houghton* (1860), 14 Ind. 505, 77 Am. Dec. 69; *Haugh* v. *Blythe* (1863), 20 Ind. 24; *Bell* v. *Hewitt* (1865), 24 Ind. 280; *Wolke* v. *Fleming* (1885), 103 Ind. 105, 2 N. E. 325, 53 Am. Rep. 495; *Piper, Exr.,* v. *Fosher* (1890), 121 Ind. 407, 23 N. E. 269; and *Lowman* v. *Sheets* (1890), 124 Ind. 416, 24 N. E. 351, 7 L. R. A. 784. We think that it clearly appears that there were a number of performances in which the appellants must have participated before the preferred stock could be redeemed, which were not within the year. Further, we have examined each of the above authorities cited by appellants, and note that in each case the contract had been fully performed by one of the parties. The case of *Wilson* v. *Ray* (1859), 13 Ind. 1, involved an executory contract like the one in suit, and in that case it was held that the fact that there had been no performance on the part of the plaintiff, he having paid nothing and the defendant having received nothing, very clearly distinguished that case from *Donellan* v. *Read* (1832), 3 Barn. & Adol. 899, which was a case similar to the ones relied upon by appellants. The fact that the complaint was based upon a contract that could not be performed within the year made it bad, and the demurrer for that reason

was properly sustained.    Other grounds of demurrer are presented, but we do not deem it necessary to consider them.

The judgment is affirmed.

## ON PETITION FOR REHEARING.

NICHOLS, C. J.—Appellants, in an able brief on petition for rehearing, earnestly contend that the court has misinterpreted the statute of frauds. Their contention is that an oral agreement does not fall under the condemnation of the statute of frauds unless it affirmatively appears that the contract could not be performed within the year *without a violation of the intention of the parties.* In support of their position they have quoted from *Nester* v. *Diamond Match Co.* (1906), 143 Fed. 72, 74 C. C. A. 266, where the court upheld an oral contract to receive from, sort and deliver to plaintiff, logs "continuously so long as defendant controlled, managed and operated" a certain river. We see nothing in the face of this contract that indicates as to whether the defendant would control, manage and operate the river a week, month or a year, or longer.

They also cite *Rogers* v. *Brightman* (1859), 10 Wis. 49, 65, which was decided upon the evidence, the court saying: "The evidence of the defendants themselves showed that the logs could not all have been sawed by their mill, within one year from the time the contract was made." And the court further speaking says that if "it appears that everything provided for by the contract may in the nature of things and without any violation of its provisions, be done within the year, it cannot then be avoided by an outside inquiry." In the case at bar there was no outside inquiry, but the court determined from the contract itself, the substance of which is stated in the original opinion, that in the na-

ture of things, without a violation of its provisions, the contract could not be performed within the year.

They also cite *Warner* v. *Texas Pac. R. Co.* (1896), 164 U. S. 418, 434, 17 Sup. Ct. 147, 153, 41 L. Ed. 495, in which case the railroad company contracted to "put down the iron rails and maintain a switch for appellant's benefit for shipping purposes as long as he needed it," and the court said: "The parties may well have expected that the contract would continue in force for more than one year; it may have been improbable that it would not do so; and it did in fact continue in force for much longer than a year, *but they made no stipulation which in terms or by reasonable inference required that result, and again the question is * * * whether the contract according to reasonable interpretation of its terms required that it should not be performed within the year.*" The contract here under consideration was for the construction of a building, thereafter to be operated by a realty company, and from the proceeds of its operation to pay the indebtedness represented by preferred stock, maturing at the rate of $3,500 per year for nine years, $58,500 at the end of the tenth year, with the right to make additional payments on the stock last maturing. We hold that the reasonable interpretation of these terms required that it should not be performed within the year.

*Treat* v. *Hiles* (1887), 68 Wis. 344, 32 N. W. 517, 60 Am. Rep. 858 is cited, in which it was held that in the nature of things the parties could not have known that a certain quarry to be operated would not be exhausted within one year. This case is clearly not in point.

*Wooldridge* v. *Stern* (1890), 42 Fed. 311, 9 L. R. A. 129, is cited. In that case it was held that the term *not to be performed* "does not include an agreement not likely to be performed within the year, nor one scarcely expected to be performed within that time;

but rather does it purport such agreements which, by a reasonably clear or fair interpretation of all the parts, viewed by the then existing circumstances, do not admit of performance according to the language and intention within so short a period." And again we repeat that the contract involved in this transaction by reasonably clear and fair interpretation of all of its parts does not permit of performance within the year.

Blair Town Lot and Land Co. v. Walker (1874), 39 Iowa 406, is cited, in which case it is said "to be within the statute, the contract itself must show from the nature of its subject matter, by its express terms, or by its necessary implication, that its performance within the year is forbidden—it must show that it is not to be performed." By the construction which we give this contract, not only by its terms, but by necessary implication, it was not to be performed within the year.

In the case of Lennard v. Texarkana Lumber Co. (1906), 46 Tex. Civ. App. 402, 94 S. W. 383, it was expressly held that the contract of employment was for an uncertain or indefinite period of time.

In the case of Thomas v. Armstrong (1889), 86 Va. 323, 10 S. E. 6, 5 L. R. A. 529, it was held that if by the terms or by reasonable construction a contract not in writing can be fully performed within a year, although it can be done only by the occurrence of some improbable event, as the death of the person referred to, it is not within the statute.

We are not out of harmony with this decision for we hold that by a reasonable construction of the contract involved it cannot be performed within the year. The above cases cited by appellants are cases from which they have quoted in their brief.

In Brown, Statute of Frauds (5th ed.) §281 the author said: "Where the manifest intent and understanding of the parties, as gathered from the words and

circumstances existing at the time, are that the contract shall not be executed within the year, the mere fact that it is possible that the thing to be done may be done within the year, will not prevent the statute from applying.  *  *  *  such an accomplishment must be an execution of the contract according to the understanding of the parties."

Again in 1 Chitty, Contracts (11th ed.) 99, the principle is thus stated: "This enactment applies to all contracts, the complete performance whereof is of necessity to extend beyond the space of a year; the rule being that where the agreement distinctly shows upon the face of it, that the parties contemplated its performance to extend over a longer period than one year, the case is within the statute.  Accordingly, the provisions of the statute render a verbal contract void, if it appear to have been the understanding of the parties at the time, that it was not to be *completed* within a year, although it might be, and was, in fact, *in part* performed within that period."

In the English case of *Boydell* v. *Drummond* (1809), 11 East 142, the plaintiff proposed to publish a series of illustrated scenes from Shakespeare in eighteen numbers, one number at least annually.  After receiving two numbers the defendant refused to take any more.  Although there was no express agreement that the contract should not be performed within the year, the court held that it was "impossible to say that the parties contemplated that the work was to be performed within the year," but that on the contrary "the whole scope of the undertaking shows that it was not to be performed within the year, and was therefore within the statute of frauds."

In *Peters* v. *Westborough* (1837), 19 Pick. (Mass.) 364, 31 Am. Dec. 142, the court said: "It must either have been expressly stipulated by the parties, or it must

appear to have been so understood by them, that the agreement was not to be performed within a year." But who can doubt what the express and specific understanding of the parties in the case at bar was and that it was not to be performed within one year or at any rate that it appears to have been so understood by them?

In the original opinion there were other grounds of demurrer presented, but we did not deem it necessary to consider them. We deem it expedient, however, in ruling upon the motion for a rehearing that we call attention to one other ground of demurrer.

It is provided by cl. 4, §7462 Burns 1914, §4904 R. S. 1881, that no action shall be brought upon any contract for the sale of lands unless the promise, contract 4. or agreement upon which the action is brought, or some memorandum or note thereof is in writing and signed by the party to be charged, or by some person by him lawfully authorized.

By the contract involved, appellants agreed to furnish appellees with funds with which to acquire certain real estate located in the city of Indianapolis, Indiana and appellees agreed to cause said real estate to be conveyed to a realty company which was to be incorporated, and to furnish abstracts showing the title in such company to be a good merchantable estate in fee simple. It was agreed that in payment for such real estate there would be issued to such persons as the appellees might designate $16,000 of the common stock of the realty company. To say that this contract did not involve the purchase, the sale and the conveyance of real estate would be a clear misinterpretation of its terms.

In the case of Collins v. Green (1907), 40 Ind. App. 630, 82 N. E. 932, appellant contracted with appellee to purchase for him certain real estate agreeing to pay him a commission when the purchase was made. Ap-

pellee made the purchase and took a conveyance therefor to himself. Thereafter he refused to convey the same to appellant but sold it to another party. The court held that the transaction was within the section of the statute above quoted.

In the case of *Mather* v. *Scoles* (1870), 35 Ind. 1, appellee conveyed certain lands to appellant upon an agreement that appellant would procure a conveyance of certain real estate from one Evans to appellee or to pay the appellee a sum of money sufficient to procure such conveyance from Evans.

Appellant failed to procure from Evans the conveyance of the land stipulated. In deciding the case on appeal, the Supreme Court says: "But what is the effect of the statute of frauds upon the contract alleged in the complaint? Our statute provides that no action shall be brought upon any contract for the sale of lands, unless the promise, contract, or agreement upon which the action shall be brought, or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or by some person thereto by him lawfully authorized. Here the contract was not that Mather himself would convey the lands to Scoles but as it is alleged in the complaint, that he would procure Evans to do so. Was this a contract for the sale of lands within the statute, which, to be binding, must be in writing? We think it was. It is so decided in *Chiles* v. *Woodson*, 2 Bibb. 71; *Parker's Heirs* v. *Bodley*, 4 Bibb. 102; *Griffin* v. *Coffey* (1849), 9 B. Mon. 452; *Hocker* v. *Gentry*, 3 Met. Ky. 463; *Brown, Admr.* v. *Jones*, 46 Barb. 400; 4 Amer. Law Reg. (N. S.) 383." See also, *Allen* v. *Richard* (1884), 83 Mo. 59; *Haeberle* v. *O'Day* (1895), 61 Mo. App. 390.

Petition for rehearing overruled.