[No. 13394.  Department One.  November 17, 1916.]

# W. D. GODEFROY, *as Northern Pacific Land Exchange, Respondent*, v. FRED R. HUPP *et al., Appellants.*[1]

BROKERS—COMMISSIONS—PROCURING CAUSE—QUESTION FOR JURY. Whether brokers were the procuring cause of an exchange of properties, is a question for the jury, where they produced the person ready, able and willing to make the exchange, and it is immaterial that the exchange as finally concluded by the principal did not embrace all the property listed.

SAME—VALIDITY OF CONTRACT—DIVISIBILITY—REALTY AND PERSONALTY. An oral contract for the payment of° commissions on the sale of real estate being void under Rem. 1915 Code, § 5289, a contract for commissions on the exchange of both real and personal property, if indivisible, is subject to the bar of the statute in its entirety.

TRIAL—PROVINCE OF COURT AND JURY—CONTRACTS. Whether a contract is divisible is a question of law dependent upon the terms of the contract; and what the terms are is a question of fact dependent upon the evidence.

SAME—QUESTIONS OF FACT—NONSUIT—JUDGMENT. Upon challenge to the sufficiency of the evidence, a nonsuit or judgment *non obstante* can be granted only when there is neither evidence nor reasonable inference from the evidence to sustain a verdict.

BROKERS—CONTRACT FOR COMMISSIONS—DIVISIBILITY — VALIDITY— STATUTE OF FRAUDS. An oral agreement to pay a commission on any sale or exchange of defendant's real estate or stock (whether of the real estate alone, the stock alone, or both together) is severable, as the several stipulations are not so interdependent but that a distinct engagement as to any one may be fairly extracted from the whole; hence, on an exchange of both real and personal property, the commissions as to the personalty put in at a definite value is not within the bar of the statute of frauds.

SAME—DIVISIBILITY OF CONTRACT—EVIDENCE—ADMISSIBILITY. In such a case, the broker is not bound by the written contract of exchange, to which he was a stranger, fixing no definite value upon the personalty, but may show by parol evidence the value at which the personalty was estimated in the trade.

CUSTOMS AND USAGES—CONTRACT FOR COMMISSIONS—RATE. In the absence of evidence as to the rate of commissions to be paid on an

[1]Reported in 160 Pac. 1056.

exchange of personal property, the broker is entitled to recover such rate as was usually and customarily paid at the place in question.

APPEAL—REVIEW—HARMLESS ERROR. Appellant cannot complain that the jury estimated commissions for the exchange of property at a lower rate than the respondent was entitled to.

HUSBAND AND WIFE—COMMUNITY DEBT—LIABILITY OF WIFE. The wife is not personally liable upon a contract by her husband to pay a commission for the exchange of personal property belonging to himself and the community.

ATTACHMENT—COMMUNITY PROPERTY—PARTIES. In an attachment upon community property, it is not necessary to name the wife as a party to the attachment, and it only binds the property on which it is levied.

SAME—DISSOLUTION—MOTION. In the absence of a motion to dissolve an attachment below, it is too late to seek its dissolution on appeal after it had been carried into the judgment.

TRIAL—CONDUCT—REOPENING—DISCRETION. It is discretionary for the trial court to reopen a case for the taking of further evidence.

TRIAL—RECEPTION OF EVIDENCE—OFFER OF PROOF. A general offer of further evidence upon a point, without offer of any specific evidence or statement as to what a witness would testify to or that it was not merely corroborative, is insufficient to predicate error on its rejection.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered November 2, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action to recover a broker's commission. Modified.

*Peacock & Ludden,* for appellants.
*McCarthy, Edge & Davis,* for respondent.

ELLIS, J.—Action by a broker for services rendered in an exchange of personal property for real estate. There was evidence tending to establish the following facts: About December 1, 1913, defendants were the owners of certain real property and also of one hundred shares of the capital stock of Holland-Horr Mill Company, a corporation, as their community property. Defendant Fred R. Hupp employed plaintiff to make a sale or exchange of this property or any

part of it, agreeing to exchange any portion of it, either
the stock alone or the real property alone or some of the
real property and some of the stock, for other property, pref-
erably a stock ranch or wheat farm. Hupp gave to plaintiff
a list of the property, placing separate valuations on each
item. The valuation placed on the Holland-Horr Mill Com-
pany stock was $800 a share. He promised to pay plaintiff
a commission for making such a sale or exchange. For a
number of months thereafter, plaintiff exerted himself to
make a sale or exchange of this property and different parts
of it. Different negotiations were had with Hupp's approval
involving prospective sales or exchanges of the stock alone.
He was willing to sell or exchange the stock alone.

About four months after the property was listed with him,
plaintiff employed one Mulcahy as an assistant in his office,
agreeing to pay him one dollar a day and divide commis-
sions on sales or exchanges of property in which he might
assist. Mulcahy immediately wrote to various persons solicit-
ing business. One of these, Schuler, a broker of Minneapolis,
Minnesota, answered, returning a list of Minnesota prop-
erties among which was the Minnesota Loan & Trust Com-
pany building in Minneapolis, owned by the Franklin Avenue
Investment Company, a corporation. The value of this
building was placed at $350,000. There was a mortgage
upon it for $155,000. Mulcahy submitted this list to de-
fendant Hupp, who expressed himself as willing to exchange
his property for this building. He made and delivered to
Mulcahy a new list of his property, again placing a value
of $800 a share on the one hundred shares of Holland-Horr
Mill Company stock, and added a block of stock of the
Dakota Oil Sands Company, a corporation owning certain
oil lands at Calgary, Alberta. On this stock he placed a
valuation of $5,000. Just here arises the first serious con-
flict in the evidence. Mulcahy testified that he then told
Hupp that, in case of an exchange, the commission on the
Holland-Horr Mill Company stock would be ten per cent, and

more than ten per cent on the Dakota Oil Sands Company stock. Hupp denied that, at this time, any mention was made of the commissions. After this for some time Mulcahy corresponded with Schuler, receiving from him photographs of the Minneapolis building, statements, letters, and telegrams, which Mulcahy submitted to Hupp. Among these was a letter from Schuler in part as follows:

Minneapolis, June 5, 1914.

Dear Geo.: I have your letter in answer to my wire. The deal can be put through something like this:

| | |
|---|---:|
| Cash | $40,000 |
| H Horr Stk. | 50,000 |
| Adams River | 50,000 |
| Lincoln Co. | 5,000 |
| Corbin Park | 18,000 |
| Castor Alta | 8,000 |
| Hayden Lake | 5,000 |
| St. Joe | 5,000 |
| 1-8 Int. Calgary Oil Co. | 15,000 |
| | $196,000 |

He says Bradstreet can report on the properties in five days if they want to trade. . . . Yours truly,

Henry Schuler.

Mulcahy testified that he submitted this letter to Hupp, and that thereafter throughout the negotiations the Holland-Horr Mill Company stock was valued at $500 a share instead of $800 a share as included in Hupp's original list. About the middle of June, 1914, Hupp, without notice to plaintiff or Mulcahy, went to Minneapolis and concluded the exchange. At this point arises the second serious conflict in the evidence. Both Mulcahy and plaintiff, Godefroy, testified that, on Hupp's return from Minneapolis, he admitted to them that he had included in the exchange ninety shares of the Holland-Horr Mill Company's stock at a valuation of $500 a share, and the oil stock at a valuation of $15,000. Hupp denied making this statement and testified in substance that, when he exchanged his real estate for the Minneapolis building, he threw in the stocks without placing upon them

any specific values. Upon Hupp's return to Spokane after concluding the deal, plaintiff demanded from him a commission on the entire deal, including the stock and the real estate. Defendant refused to pay any commission on the ground that plaintiff had no contract in writing. This action followed. A writ of attachment was sued out and levied upon certain real estate as the property of Fred R. and Ella Hupp. At the trial, defendants objected to the introduction of any evidence upon the ground that the contract pleaded was within the statute of frauds, and at the close of plaintiff's evidence moved for a nonsuit upon the same ground. The motion was denied. The jury returned a verdict for plaintiff in the sum of $3,750. Defendant moved for judgment *non obstante veredicto* and also for a new trial. Both motions were overruled. Judgment was entered upon the verdict, and defendants appealed.

Appellants contend, (1) that the contract for commissions was indivisible and, being oral, was subject to the ban of the statute of frauds because it included real estate; (2) that the judgment against defendant Ella Hupp individually was in any event erroneous; (3) that the court erred in carrying the attachment into the judgment; (4) that the court erred in opening the case for admission of evidence and in excluding evidence offered in rebuttal of such evidence.

Whether respondent, through Mulcahy, was the procuring cause of the exchange as finally consummated was plainly a question for the jury. That they produced the person ready, able and willing to make the exchange cannot be questioned. The fact that the exchange as finally concluded did not embrace quite all of the real estate included in appellants' list as left with respondent and did include certain machinery, a team, harness and wagon not included in that list, is immaterial. It is clear that in the main the exchange was concluded along the lines contemplated in Mulcahy's correspondence with Schuler, which was submitted to Hupp and led to

his going to Minneapolis and closing the deal. In such a case, if the contract for the commissions had been in writing, there can be no question but that respondent would have had a maintainable cause of action for commissions on the entire transaction. *Price v. Partridge*, 78 Wash. 362, 139 Pac. 34.

But the contract for the payment of the commissions, being oral, was void so far as the real estate was concerned. Rem. 1915 Code, § 5289. It is also clear that, if that contract was not divisible, it was subject to the ban of the statute in its entirety so as to preclude a recovery of any commission even for the exchange of the stock. In considering this question, we must not confuse the two contracts. The primary question here is not whether the contract of exchange as finally consummated between Hupp and Franklin Avenue Investment Company was a divisible contract, but whether the agreement creating the agency as between Hupp and Godefroy and to pay the commissions was divisible. It is the latter agreement upon which this action rests. Whether the contract was divisible is a question of law dependent upon the terms of the contract. What those terms were is a question of fact dependent upon the evidence.

On the latter question, it must be remembered in this case as in all others that, in passing upon the sufficiency of evidence, whether challenged by motion for a nonsuit or by motion for judgment *non obstante veredicto*, it is only when the court can say, as a matter of law, that there is neither evidence nor reasonable inference from evidence to sustain the verdict that either of such motions can be granted. *Young v. Aloha Lumber Co.*, 63 Wash. 600, 116 Pac. 4; *Brown v. Walla Walla*, 76 Wash. 670, 136 Pac. 1166. In the case here, there was evidence that appellant agreed to pay a commission on any sale or exchange of his property which respondent might secure, whether of the stock alone, the real property alone, or of stock and real property together. Re-

spondent so testified and we find little evidence to the contrary. It was for the jury to say whether in fact such was the agreement.

Was this contract divisible? If the several stipulations of a single contract are so interdependent that the parties cannot reasonably be considered to have contracted but with a view to the performance of the contract as a whole, and any part of the contract is subject to the ban of the statute of frauds, then no recovery can be had upon any part of it. But if the several stipulations are not so interdependent but that a distinct engagement as to any one stipulation may be fairly and reasonably extracted from the whole, then there may be a recovery on such distinct engagement whenever it is clear of the statute of frauds, though the other stipulations be subject to the ban of the statute. Browne, Statute of Frauds (5th ed.), §§ 140, 143. In the following cases involving the statute of frauds this distinction is exemplified and applied: *Jenkins v. Williams,* 16 Gray 158; *Stansell v. Leavitt,* 51 Mich. 536, 16 N. W. 892; *Rees v. Jutte,* 153 Pa. St. 56, 25 Atl. 998; *Rand v. Mather,* 11 Cush. 1, 59 Am. Dec. 131; *Mobile Marine Dock & Mut. Ins. Co. v. Mc-Millan & Son,* 31 Ala. 711; *Lowman v. Sheets,* 124 Ind. 416, 24 N. E. 351, 7 L. R. A. 784; *Southwell v. Beezley,* 5 Ore. 458.

Judged by this rule, it seems to us that the contract here involved was severable. There was nothing in the agreement as proved making the right to a commission for the sale or exchange of the stock dependent upon the sale or exchange of the real estate. Nor was there anything making that right dependent upon the stock being sold or exchanged separately from the real estate. The promise was as specific to pay a commission for the sale or exchange of the one as of the other, and that, too, whether sold or exchanged separately or in conjunction. It seems clear, therefore, that if in the exchange as finally consummated the stock was put in at a

definite value, that value furnished a sufficient basis for de-
termining the separate commission to be paid upon the ex-
change of the stock.  On this question of the value at which
the stock was traded, appellants urge that the written con-
tract of exchange was conclusive and that, inasmuch as it
fixed no separate value on any of the properties, no commis-
sion can be recovered in any event.  But respondent, being
a stranger to that contract, was not so bound by it that he
could not prove the value at which the stock was estimated
in the trade.  He was not suing on that contract as one
made for his benefit nor claiming any right originating in
the relation created by it.  Parol evidence was therefore ad-
missible to establish the facts.  *Ransom v. Wickstrom & Co.,*
84 Wash. 419, 146 Pac. 1041, L. R. A. 1916A 588; 3
Jones, Commentaries on Evidence, p. 217, § 449; Browne,
Parol Evidence, p. 31, § 28.  See, also, *Union Machinery &
Supply Co. v. Darnell,* 89 Wash. 226, 154 Pac. 183.  The
evidence adduced, though in conflict, tended to show that the
mill stock was put in at $45,000 and the oil stock at $15,000.
It was sufficient to take this question to the jury.

The original contract for commissions as proved was silent
as to the rate of commission to be paid.  It was therefore im-
plied that the rate should be such as was usually and cus-
tomarily paid at Spokane, Washington, for an exchange or
sale of such stocks.  The trial court properly so instructed
the jury.  The evidence showed that this stock was not listed
on the Spokane stock exchange, and that the commission
usually paid on unlisted industrial stocks was from eight to
ten per cent, and on unlisted mining stocks from ten to
twenty per cent.  The jury evidently computed the commis-
sions in this case at a lower rate than any of these, but of
this the appellants cannot complain, since the evidence would
have justified a higher recovery than that awarded.  We find
no sufficient reason for disturbing the verdict for insufficiency
of evidence.

The judgment is broad enough in its terms to be construed as a personal judgment against Ella Hupp individually. In this it is erroneous. The contract was made with Fred R. Hupp, and the judgment can only bind his property and that of the community. This, however, does not necessitate a reversal of the judgment. The judgment should be so modified as to run against Fred R. Hupp and the community consisting of Fred R. Hupp and Ella Hupp.

It is also urged that the attachment should not have been carried into the judgment because it ran against both Fred R. Hupp and Ella Hupp. So far as the record shows, the attachment was levied upon community property alone. It was not necessary, therefore, to name the wife as a party to the attachment at all. It only binds the property upon which it was levied, in any event. The record fails to show that any motion was made to dissolve the attachment for the reason now urged or for any other reason. It is too late to seek its dissolution now. We find no error in carrying the attachment into the judgment.

It is insisted that the court erred in opening the case and permitting the respondent to prove the community character of the stock after the evidence had been closed. This was a matter resting within the discretion of the trial court. We cannot say that the discretion was abused.

Finally, it is urged that the court erred in refusing to permit appellants to introduce further testimony as to whether or not this stock was community property. The offer was "to show the actual fact whether it is community property or separate property." There was no offer of any specific evidence nor any statement as to what the witness would testify to. There is nothing to show that, had the witness been permitted to testify, his testimony would not have been merely corroborative of that already adduced. The offer of evidence was wholly insufficient to make a predicate for error in its rejection.

The judgment is affirmed as against Fred R. Hupp and the community consisting of Fred R. Hupp and Ella Hupp. The court is directed to modify the judgment accordingly. Appellant Ella Hupp may recover her costs.

MORRIS, C. J., CHADWICK, FULLERTON, and MOUNT, JJ., concur.