[No. 24972. Department One. September 4, 1934.]

RAYMOND J. HUFF, *Respondent,* v. INEZ SUSAN HUFF, *Appellant.*[1]

*Murphy & Kumm* and *Mifflin & Mifflin,* for appellant. *Eggerman & Rosling,* for respondent.

MAIN, J.—This is a divorce action. The plaintiff sought a decree on the ground of personal indignities. The defendant resisted the divorce, and filed a cross-complaint in which she asked for separate mainte-nance. At the conclusion of the trial, the court indi-cated that, if the defendant would recast her pleading and ask for a divorce, a decree would be awarded to each of the parties, but the defendant refused to com-ply with the suggestion. The court found that the parties had been guilty of personal indignities upon

[1] Reported in 35 P. (2d) 86.

each other, and entered a decree for a divorce, as asked for in the plaintiff's complaint. The defendant appeals, and presents two questions: (a) that the respondent was not entitled to a divorce, and (b) that the division of the property made by the court was not just and equitable.

The appellant and the respondent were married July 26, 1926, and as a result of the marriage no children were born. The respondent had four children by a former marriage, and was paying for the support and maintenance of his divorced wife and children the sum of one hundred dollars per month. The appellant had not been previously married, and at the time of the trial she was forty-two years of age and the respondent forty-one. After the parties had established a home, there came to live with them two of the children of the respondent and a niece and nephew of the appellant, and a portion of the time another nephew of the appellant resided in the home. In the course of time, disagreements arose between the parties, resulting in pronounced discord and quarrels. The parties ceased to live together July 28, 1932, and shortly thereafter the present action was instituted.

At the time of the marriage, the respondent owned ten shares of stock in the Puget Sound Bridge and Dredging Company, and had a few hundred dollars in the bank. At this time, he was secretary of that company, and was receiving a salary of four hundred dollars per month. The appellant had been employed by the same company for a number of years, and had risen to the position of chief clerk and was getting a salary of two hundred dollars per month. She had accumulated from her savings something over four thousand dollars in money. When the home was acquired and improved, the appellant put four thousand dollars into the property. At the time of the trial, the re-

spondent owned one hundred twenty-eight shares of the stock of the Puget Sound Bridge and Dredging Company. In addition to this, he and one H. W. McCurdy had an option upon a sufficient amount of the stock of that company to give them control. McCurdy was the president and the respondent was the secretary, and these two men were operating the company, which was engaged in the contracting business, such as building bridges and doing dredging and harbor work.

Upon the question of whether the respondent was entitled to a divorce, the trial court found that:

"The parties have been guilty of cruel treatment of and to each other and have imposed personal indignities upon each other, rendering their lives burdensome and rendering it impossible for them longer to live together and plaintiff is entitled to a divorce from defendant on plaintiff's complaint."

After reading and considering all the evidence, we are of the view that the finding of the court is supported by the preponderance thereof. It would serve no useful purpose to here set forth in detail the evidence of the respective parties as to their relations which resulted in an impossible situation and furnished a legal basis for a divorce.

It is said, however, that, since the court found that the respondent was at fault as well as the appellant, no divorce decree should have been granted. In this connection, it may be said that the rule that a party cannot be given a divorce when it is found that he has been guilty of like misconduct against the other party, is not here applicable. *McMillan v. McMillan*, 113 Wash. 250, 193 Pac. 673.

The respondent testified that the appellant, without reason or excuse, had denied to him for some time prior to their separation conjugal relations, and, if this be

true, it would furnish a basis for the decree. *Gibson v. Gibson*, 67 Wash. 474, 122 Pac. 15; *Nordlund v. Nordlund*, 97 Wash. 475, 166 Pac. 795, L. R. A. 1918A, 59. The charge of the respondent is denied by the appellant, but the trial court, in an oral opinion at the conclusion of the trial, stated that a large part of the difficulties originated in the lack of sex relations, and for the further reason that the appellant was inexperienced in the matter of the care and management of children. These are matters in which it cannot be said that the respondent was guilty of like misconduct against the appellant, and takes the case out of the rule above stated. The entry of the interlocutory divorce decree was proper.

█ Upon the question of the division of property, we are also in accord with the views of the trial court, as embodied in the oral opinion, the memorandum opinion and the formal findings. To the matter of the division of the property, the court gave diligent and thoughtful consideration. The decree gave the appellant the sum of four thousand dollars, which was the amount that she had originally invested in the home property, and provided that this should be evidenced by a promissory note secured by a mortgage upon that property, which should draw interest at six per cent, payable quarterly, and the principal to be paid five years after date. The appellant was also given the sum of five thousand dollars, which should be payable in monthly installments of seventy-five dollars per month, without interest except in the event that the installments were not paid when due.

The court was of the view, as expressed in the oral opinion, which was adhered to in the memorandum opinion and the formal findings, that the value of the community property was approximately eleven thousand five hundred dollars, after taking out the four

thousand dollars that the appellant had invested in the home. Out of this, he gave the appellant five thousand dollars, which was to be payable as indicated, seventy-five dollars per month, and provided that the attorneys on each side of the case should receive seven hundred dollars, to be paid out of the same fund.

The appellant says with reference to the property that the court erred (a) in its valuation, (b) in the terms of the mortgage, (c) in fixing the monthly payments, and (d) in not providing for interest upon the five thousand dollars. The respondent, at the time of the trial, as already stated, together with McCurdy, had an option for the purchase of a controlling interest in the Puget Sound Bridge and Dredging Company. But this was of little, if any, cash value. The option was subject to be terminated upon the failure to make the installments provided for, and would not be consummated, if carried out, for many years. The respondent also had thirty thousand dollars of life insurance, of which his children were the beneficiaries, and a considerable amount of what might be termed business insurance. As to what the cash surrender value of any of these policies was, if anything, does not appear.

The value of the stock in the dredging company depended upon the ability of the respondent and McCurdy to carry on and make a profit out of their undertaking. For a number of years prior to the trial, the business had not been profitable. It can hardly be disputed that the value of the stock was highly speculative. The home, which cost, complete, ninety-five hundred dollars, subject to the mortgage, was given to the respondent. At the time of the trial, both parties seemed to recognize that the home property was worth six thousand dollars or more. We think the court

reached as nearly a correct valuation of the property as possible under the evidence in the case.

The other complaints are of minor importance, and, undoubtedly, those things were taken into consideration by the court when it fixed the amount which the appellant should have and the terms thereof. Taking into consideration all the facts and circumstances, we think the division of the property was just and equitable.

There is a contention with reference to the ruling of the trial court in sustaining an objection to questions propounded by the appellant to one of the witnesses. But the record does not disclose any error in this regard. It cannot be determined from the questions asked what the testimony would have been, whether material or immaterial. No offer of proof appears to have been made, which was essential in order to preserve the question. *Schirmer v. Nethercutt,* 157 Wash. 172, 288 Pac. 265; *Poropat v. Olympic Peninsula Motor Coach Co.,* 163 Wash. 78, 299 Pac. 979.

The judgment will be affirmed.

HOLCOMB, MITCHELL, MILLARD, and STEINERT, JJ., concur.