[Nos. 32044, 32045. Department Two. August 14, 1952.]

MELVIN SUTTON, *Respondent*, v. C. J. MATHEWS *et al.*, *Appellants.*

CHARLOTTE UGGEN, *Respondent*, v. C. J. MATHEWS *et al.*, *Appellants.*[1]

[1]Reported in 247 P. (2d) 556.

*Bayley, Fite, Westberg, Madden & Goodin,* for appellants.
*Edwin R. Johnson,* for respondent.

HAMLEY, J.—Melvin Sutton and his sister, Charlotte Uggen, brought separate actions against C. J. Mathews and Mrs. Mathews to recover for personal injuries and property damage sustained in an automobile accident. The accident occurred near Shelton, in Mason county, Washington, on November 9, 1948, when a vehicle driven by Mathews collided with one driven by Sutton. The two actions were consolidated for trial and appeal. Mr. Mathews, who was alone in his car at the time of the accident, will be referred to as if he were the only defendant and appellant.

The jury returned verdicts in favor of both plaintiffs. Judgments were entered accordingly, and defendant appeals.

The first assignment of error is that the trial court erred in excluding certain testimony of Dr. Wayne Walker bearing upon the adequacy of Sutton's vision at the time of the accident.

The trial court excluded this evidence on the ground that it was too remote to be of any pertinent value. Respondents argue that this was a correct ruling. They also contend that, if the ruling was incorrect, there still should be no reversal because there was no offer of proof, and because, in any event, the exclusion of such evidence was not prejudicial.

As a part of his affirmative defense of contributory negligence, appellant alleged that Sutton's vision was defective

at the time of the accident, and that the eyeglasses then being worn by him were not adequate. In proof of this allegation, appellant offered the testimony of two optometrists, Dr. Glenn W. Landers, of Shelton, and Dr. Wayne Walker, of Olympia.

Dr. Landers, who testified by deposition, told of an examination he had made of Sutton's eyes on June 26, 1941. This was seven years and four months prior to the accident. This examination revealed that, without glasses, Sutton then had a visual acuity of 20/300 in his right eye, and 20/400 in his left eye. Dr. Landers made an optometric prescription for Sutton, and, with the glasses prescribed, Sutton had a visual acuity of 20/15 in each eye. Sutton was wearing these glasses at the time of the accident and had had no re-examination of his eyes prior to that time.

Dr. Walker testified that his former associate, Dr. Gellman, now deceased, had examined Sutton's eyes on May 3, 1949. This was approximately six months after the accident. The record of this examination showed that, without glasses, Sutton's vision was 20/400 in either eye. This record further showed that, with the aid of lenses, his vision could be brought up to 20/50 in the right eye, minus one letter, and 20/80 in the left eye. Dr. Walker testified, in effect, that the size of the second number in this method of measurement indicates quality of vision, 20/20 being considered normal and a larger second number indicating poorer vision.

Dr. Walker was then handed Dr. Landers' card record of the latter's 1941 optometric examination, and was asked what that card appeared to be. Counsel for respondent objected to the question, and the court inquired as to the purpose of the question. Counsel for appellant indicated that the purpose was "to see if" the witness would be able to form any comparisons of the information shown on the card record of Dr. Landers' examination with that shown on the card record of Dr. Gellman's examination. When the trial court expressed doubt as to the propriety of the question, counsel for appellant asked that the jury be excused so that an offer of proof could be made.

After the jury left, a lengthy colloquy between the trial court and counsel for the parties occurred. In the course of this colloquy, counsel for appellant stated, in several different forms, the question he desired to ask of Dr. Walker. Typical of counsel's statements to the court regarding the proposed question are the following:

"Now, I wanted this man here who is an optometrist to testify as to the relationship between those two [optometrical prescriptions] whether one was stronger, one was weaker, one was less or more and so on."

"I want to determine from this witness if he can tell us whether or not the optometrist's prescription, the prescription for glasses, shown on one card is stronger or weaker than that prescribed by the other card."

"Yes, I was going to ask him to compare, on a hypothetical question, assuming the truth of Dr. Landers' testimony with respect to this card."

It will be observed that none of these statements purports to tell the court what the answer of the witness would be—whether favorable to appellant or respondents. Nor do any of these statements amount to a representation that the witness could answer the question at all. As a matter of fact, there is considerable doubt whether Dr. Walker could have expressed an opinion based upon a comparison of the two cards. He had already testified that the lens prescription noted on Dr. Landers' card "has no meaning" because it did not indicate whether the "cylinder" there referred to was plus or minus.

■■ In order to obtain appellate review of trial court action in excluding evidence, there must be an offer of proof. *State v. Pierce,* 175 Wash. 523, 27 P. (2d) 1087; *Huff v. Huff,* 178 Wash. 684, 35 P. (2d) 86. An offer of proof must be sufficiently definite and comprehensive fairly to advise the trial court whether or not the proposed evidence is admissible. *State v. Williams,* 12 Wn. (2d) 16, 120 P. (2d) 502; *Tomlinson v. Bean,* 26 Wn. (2d) 354, 173 P. (2d) 972. An additional purpose of such an offer of proof is to inform the appellate court whether appellant was prejudiced by the exclusion of the evidence. *Godefroy v. Hupp,* 93 Wash.

371, 160 Pac. 1056; *Poropat v. Olympic Peninsula Motor Coach Co.*, 163 Wash. 78, 299 Pac. 979; *Kirsch v. Kirsch*, 192 Wash. 156, 159, 73 P. (2d) 356.

This additional purpose of an offer of proof is not served by a statement merely advising the trial court of the question proposed to be asked. We cannot assume that the witness could have answered the question, or what his answer would have been. *Olive Co. v. Meek*, 91 Wash. 169, 157 Pac. 460. As we said in *Simonson v. Huff*, 124 Wash. 549, 554, 215 Pac. 49, this court will not reverse the cause "on the mere chance that an answer favorable to the respondents would have been returned." Hence, none of the statements of the character quoted above, advising the trial court of the question proposed to be propounded to Dr. Walker, constituted an offer of proof sufficient to permit of appellate review.

 The only statement made by counsel during the colloquy referred to, which can possibly be regarded as an offer of proof, was this:

"Then the evidence I propose will show that five or six months after the accident when tested, when his vision was tested again, his naked vision had degenerated from the 1941 test, that even with stronger glasses he was just able to meet the legal minimum required by the statute."

This offer of proof, however, added nothing to the evidence which had already been received. Dr. Landers had already testified concerning the results of the first examination, and Dr. Walker had testified as to the results of the second examination. Dr. Walker had also explained the significance of the larger second numbers in the measurement of visual acuity. Hence, the jury already had before it evidence indicating that Sutton's visual acuity had degenerated, and that, in 1949, with the newly prescribed lenses, he was just able to meet the legal minimum required by statute. (See RCW 46.20.050 [Rem. Rev. Stat. (Sup.), § 6312-46].) A further expression of opinion would have been merely cumulative, and its exclusion was therefore not prejudicial.

Appellant states in his brief that he offered to show that Dr. Walker would, on the basis of a comparison between the two cards, testify that a person whose eyes were as indicated by the subsequent examination, while wearing glasses as prescribed by the first examination, would have visual acuity "grossly below the required minimum." The testimony which was actually received, including that summarized above and additional testimony relative to the effect of Sutton's diabetic condition on his visual acuity, would have warranted appellant in asking the jury to draw that conclusion. However, we are unable to find in the record any offer to prove this by having Dr. Walker make a comparison of the two cards.

In our consideration of this question, we have not overlooked the fact that, at the close of the colloquy referred to, appellant asked if the court would make the record show "that I had made my offer of proof so I will not be foreclosed of not having asked this man the question?" The trial court assented. Appellant was thereby excused from actually asking the witness the proposed questions. He was not excused from advising the court that the witness could answer the questions, and what his answer would be.

We are therefore of the view that appellant made no offer of proof sufficient to entitle him to a review and reversal on this assignment of error. It is accordingly unnecessary to discuss the correctness of the trial court's ruling in excluding, on the ground of remoteness, the testimony in question.

The only other assignment of error relates to the refusal of the trial court to give appellant's proposed instruction No. 14, relating to the emergency doctrine.

Superior Court Rule 13, 34A Wn. (2d) 115, requires counsel for the respective parties to file with the clerk one copy of all proposed instructions to the jury. After the trial of these consolidated actions, it was discovered that appellant's proposed instructions were not included in the court clerk's records and files. Counsel for appellant thereupon moved to correct the record, and filed a supporting affidavit in which it was averred, on information and belief, that he had timely

filed his proposed instructions. The trial court denied this motion. The proposed instruction in question was therefore not included in the statement of facts, as required by Rule on Appeal 34(8), 34A Wn. (2d) 38, where it is sought to review the failure to give such instructions.

■ Had appellant desired us to review the trial court's refusal to change the clerk's record and the court's consequent failure to include the proposed instructions in the statement of facts, it would have been necessary for him to propose an amendment to the statement of facts incorporating the proposed instructions. Rule on Appeal 36, 34A Wn. (2d) 39; *Livermore v. Northwest Airlines,* 6 Wn. (2d) 1, 106 P. (2d) 578. The trial court's action thereon could then have been reviewed in an action in mandamus. *Johnson v. Washington Trust Co.,* 33 Wn. (2d) 84, 204 P. (2d) 505.

■ No such attempt having been made to amend or amplify the statement of facts, it will be considered correct and complete as certified by the trial court. *Hinz v. Stoller,* 199 Wash. 611, 92 P. (2d) 713. Hence, we cannot review the assignment of error in question.

The judgments are affirmed.

HILL, FINLEY, and OLSON, JJ., concur.

SCHWELLENBACH, C. J. (concurring)—An offer of proof is an offer to prove something. That was not done in this case.