[No. 34356. *En Banc.* August 7, 1958.]

THE STATE OF WASHINGTON, *Respondent*, v. HENRY M. GRIFFITH, *Appellant*.[1]

Reported in 328 P. (2d) 897.

722

*James P. Billberg* and *Francis P. Cael,* for appellant.

*Edward G. Cross,* for respondent.

HUNTER, J.—Henry M. Griffith was arrested, charged, and convicted of murder in the first degree for killing A. B.

Davis near Lind, Washington, on October 4, 1956. The jury returned a special verdict recommending that the death penalty be imposed. On March 8, 1957, the defendant was sentenced to be hanged. This appeal followed.

The evidence reveals that A. B. Davis left his home at Lind, Washington, shortly after noon on October 4, 1956, informing his wife that he was going to make a gas delivery. That was the last time he was seen alive. When he did not return to his home for his evening meal, as was his custom, a search was organized by his son and neighbors. Upon information that the truck which he was driving that day was seen at what is known as the Campbell Place, the search was centered in that area. On the morning of October 5, 1956, the searchers found Mr. Davis' body approximately 162 feet from the roadway. There was a bullet wound in the head, and the body was lying face down with the arms crossed behind the back. The belt from his trousers had been removed and was lying beside the body. His pockets had been rifled, the contents of his billfold were scattered, and the wristwatch which he had been wearing was missing.

During the search for the body, a blue 1949 Pontiac sedan was found standing in the field near the Campbell Place. As a result of a check of the license number of the automobile, the sheriff's office ascertained that it was registered to Alfred J. Bolser of Spokane, Washington, an uncle of the appellant Henry M. Griffith. It was further ascertained that the appellant had borrowed the car to make a trip to Pasco, Washington. On the basis of this information, a state alarm went out for the apprehension of the appellant.

On the night of October 6, 1956, at approximately 11:30 p. m., pursuant to a radio call, Warren Adams, a detective with the Spokane county sheriff's office, proceeded to north Market street in Spokane, where he found the appellant lying on the shoulder of the street suffering from a bullet wound in the right abdomen which was self-inflicted. Upon ascertaining the identity of the appellant, Detective Adams asked him if he was the one who shot the man near Lind, Washington, and the appellant answered yes. In response

to a question of why he shot Mr. Davis, the appellant stated that he was hunting near Lind, that he was on parole from Monroe, and Davis told him he was going to arrest him. Not wanting to go back to Monroe, he had to shoot the man. The appellant again admitted the killing in the ambulance on the way to the hospital. At this time he denied robbing Mr. Davis, but admitted taking his wristwatch. Detective Adams took the wristwatch which the appellant was wearing into his possession and during the trial it was identified as the wristwatch of Mr. Davis.

On October 7, 1956, the gas truck driven by Mr. Davis on the day in question was discovered in Seattle, Washington. The evidence indicates that the appellant lost the keys to the Pontiac near the Campbell Place (which were, in fact, found in that area), and that he took the Davis truck and drove to Seattle.

The state sought to introduce two written confessions obtained from the appellant on the seventh and eleventh of October, 1956, in which he again stated the reasons he deemed it necessary to kill Mr. Davis. The trial court admitted the latter as exhibit No. 19, but rejected the former which was obtained on the same day that the appellant had undergone a serious operation.

The trial court admitted state's exhibit No. 23, a 38-55 rifle, which inflicted the wound received by the appellant and which was discovered by the police officers when they found the wounded appellant. It was established that this rifle was owned by appellant's uncle. Mr. Donald F. McCall, a ballistics expert, and chairman of the Department of Police Science and Administration at Washington State College, testified that the bullet jacket recovered from the wound of A. B. Davis, had been fired by this rifle. He testified further that as a result of the size of the powder burns around the wound the muzzle of the gun at the time it was fired was something less than eighteen inches from the penetrating wound.

Appellant first assigns as error the failure of the trial court to sustain his demurrer to the amended information

on the ground that it is indefinite as to the weapon used in the killing. This assignment is without merit.

■ The rule is well established in this state that it is sufficient, in charging a crime, to follow the language of the statute, where such crime is there defined, and the language used is adequate to apprise the accused with reasonable certainty of the nature of the accusation. *State v. Olsen,* 43 Wn. (2d) 726, 263 P. (2d) 824 (1953); *State v. Moser,* 41 Wn. (2d) 29, 246 P. (2d) 1101 (1952); *State v. Forler,* 38 Wn. (2d) 39, 227 P. (2d) 727 (1951).

RCW 10.37.050 provides:

"The indictment or information is sufficient if it can be understood therefrom—

" . . .

" (6) That the act or omission charged as the crime is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended; . . ."

■ The amended information in this case is substantially in the words of the statute (RCW 9.48.030) and charged, in part, that the appellant did "shoot and kill A. B. Davis *with a rifle.*" This is a sufficient description of the weapon used in the killing. See *State v. Bridgham,* 51 Wash. 18, 97 Pac. 1096 (1908).

The next assignment of error is that the trial court erred when it admitted, over objection, state's exhibit No. 1 (the belt), which was found beside Mr. Davis' body when it was discovered. The appellant argues that the exhibit was irrelevant and immaterial and that he was prejudiced by its admission into evidence.

■ We do not agree. The belt was among the effects of the decedent found at the scene of the crime and was directly related to the manner in which the crime was committed. As we have previously stated, when Mr. Davis was found, he was lying face down with his arms crossed behind his back, *and on the back of both wrists there appeared a mark an inch and one-half to two inches wide.* Dr. J. Collin Lindsay, who examined the body on October 5, 1956, testi-

fied that in his opinion the marks upon the wrists (which were about the same width as the belt) were caused by the application of pressure from a flat object such as a belt; that the object that made the marks was on the wrists of the decedent before death, at the time of death, and after death. The trial court did not err in admitting the belt.

The appellant contends the trial court erred in admitting into evidence state's exhibits No. 2 through No. 13, which were pictures of the body taken at the scene of the crime and at the morgue, on the ground that the corpus delicti had already been established, and the photographs were introduced for the purpose of inflaming the jury and arousing their passion and prejudice.

In *State v. Farley*, 48 Wn. (2d) 11, 290 P. (2d) 987 (1955), we held:

"Pictures that accurately represent the true state or condition of the thing depicted, are admissible if they have probative value upon some element of the crime charged. The pictures and clothes in question had a probative value upon the questions of the identity of the victim, the means by which she came to her death, and the existence of intent on the part of appellant. Competent evidence is not prejudicial just because it is gruesome. See *State v. Drummond*, 70 Wash. 260, 126 Pac. 541; *State v. Payne*, 25 Wn. (2d) 407, 171 P. (2d) 227, 175 P. (2d) 494; *State v. Nyland*, 47 Wn. (2d) 240, 287 P. (2d) 345."

The admission or rejection of photographs lies largely in the sound discretion of the trial court, and in the absence of a showing of abuse of discretion, the trial court's ruling will not be disturbed on appeal. *State v. Nyland*, 47 Wn. (2d) 240, 287 P. (2d) 345 (1955).

In the case at bar, the pictures had a probative value, not only to establish the identity of the victim, but to show the manner in which he was killed, the existence of the marks on the wrists, the existence of intent on the part of the appellant, and to aid the jury in understanding the physical facts relevant to the crime. Although the pictures are gruesome, the trial court did not abuse its discretion by their admission.

The appellant contends that the trial court erred in overruling his objection to the materiality and admissibility of the testimony of Hazel Bolser, appellant's aunt, regarding a telephone conversation she purportedly had with the appellant during which he admitted that he had committed the crime. The appellant argues that this testimony was objectionable for the reason that it was hearsay, and the witness could not properly identify the person with whom she was speaking.

██ The respondent concedes the rule to be that a telephone conversation is not admissible, unless the witness can identify the party with whom he is talking, but argues, in the instant case, the witness could and did properly identify the appellant. From the record, it appears that Mrs. Bolser did sufficiently identify the person with whom she was talking as the appellant, and the trial court therefore did not err in admitting the testimony.

Next, the appellant assigns as error the failure of the trial court to suppress his oral and written confessions. *First,* in respect to the *oral* confessions, the appellant, in the absence of the jury, took the stand in support of his motion to suppress. He testified that the last thing he remembered on the night that he was apprehended was somebody putting a blanket over him, and that *he had no memory* of anything that transpired thereafter until he woke up after surgery. On the other hand, Detective Adams testified that he interviewed the appellant after he was covered with the blanket, and during this interview and in the subsequent one in the ambulance on the way to the hospital, the appellant responded freely to the questions asked, his speech was coherent, he was not in shock at the time, and the two stories he told were substantially the same. William C. Seitz, a deputy sheriff from Spokane county, also testified that he heard the oral confession of the appellant and that the appellant was coherent and responded readily to the questions asked by Detective Adams.

██ The trial court did not err in admitting the testimony of the oral confessions, since they affirmatively appear to have been the product of appellant's own observa-

tion and recollection, voluntarily given at the time when he realized the full import of his acknowledgment of guilt.

*Secondly*, in respect to the *written* confessions, we have stated previously that the trial court excluded the first confession obtained on October 7, 1956. The only written confession admitted was one taken on October 11, 1956, at 2:30 p. m., by Ernest R. Whitmore, Jr., then prosecuting attorney of Adams county. The interrogation was conducted in the presence of Detective James D. Allen of the Spokane county sheriff's office; T. D. Stamper, special deputy; and Dolores Riddle, the stenographer. The stenographer transcribed the interview and the completed transcript was taken to the appellant at the hospital on October 15, 1956, by a notary public, Marion M. Stark. The statement was then read by Henry Griffith and signed and sworn to by him at that time.

This confession was admitted as state's exhibit No. 19. There is sufficient testimony in the record that this confession, which is, in fact, substantially the same as the oral confessions previously given although somewhat more in detail, was voluntarily given by the appellant after he was informed of his rights by the prosecutor; that he was capable of making the same, and that it was not the product of duress but rather was the product of his own observation and recollection of the crime he had committed. The trial court did not err in its admission.

The appellant next contends that the trial court erred in refusing to permit defense witness Betty Jo Malchon, a registered nurse employed at Sacred Heart Hospital in Spokane, on October 11, 1956, to testify as to his mental condition.

Mrs. Malchon was called by the defense, in the absence of the jury, as a witness in support of the appellant's motion to suppress his confession of October 11, 1956. There was no proper foundation laid to qualify this witness to express an opinion as to the mental condition of the appellant on the day in question. In any event, no offer of proof was made as to what the witness' opinion would have been if she were allowed to testify, and therefore, the rule

stated in *Sutton v. Mathews*, 41 Wn. (2d) 64, 247 P. (2d) 556 (1952) is controlling. There we said:

"In order to obtain appellate review of trial court action in excluding evidence, there must be an offer of proof. *State v. Pierce*, 175 Wash. 523, 27 P. (2d) 1087; *Huff v. Huff*, 178 Wash. 684, 35 P. (2d) 86. An offer of proof must be sufficiently definite and comprehensive fairly to advise the trial court whether or not the proposed evidence is admissible. . . . *An additional purpose of such an offer of proof is to inform the appellate court whether appellant was prejudiced by the exclusion of the evidence.* . . . .

"This additional purpose of an offer of proof is not served by a statement merely advising the trial court of the question proposed to be asked. *We cannot assume that the witness* could have answered the question, or what his *answer would have been.* . . . this court will not reverse the cause 'on the mere chance that an answer favorable to the respondents would have been returned.' " (Italics ours.)

See, also, *Swanson v. Solomon*, 50 Wn. (2d) 825, 314 P. (2d) 655 (1957).

 The appellant argues further that the trial court, in refusing to allow Mrs. Malchon to testify as to his mental condition, thereafter erroneously concluded that there was not sufficient evidence on which to submit to the jury the defense of insanity and, therefore, withdrew it from their consideration. There is no merit in this contention. As stated above, Mrs. Malchon's testimony concerning *mental condition* was offered only *in support of the appellant's motion to suppress his confession* of October 11, 1956. She was not called thereafter, in the presence of the jury, by the appellant to testify in support of his special defense of insanity and therefore, the excluded testimony was not related to the issue of insanity.

Further, the appellant is in error when he argues that the exclusion of Mrs. Malchon's testimony deprived him of his defense of insanity. Expert medical testimony was offered on this issue but all of the psychiatrists who testified agreed that the appellant was legally sane, that is, he did have the mental capacity to distinguish between right and wrong with reference to the act committed. *State v.*

*Collins,* 50 Wn. (2d) 740, 314 P. (2d) 660 (1957) and cases cited therein.

In spite of the complete lack of any testimony to establish legal insanity, *the trial court did not withdraw such defense from the consideration of the jury* but, on the contrary, proper instructions were submitted on the special defense of insanity, together with a form of a verdict which would permit the jury to determine that the appellant was not guilty by reason of insanity.

The appellant assigns as error instruction No. 8 given by the trial court which reads as follows:

"You are instructed that no evidence has been introduced which would prove the offense that occurred to be either excusable homicide, justifiable homicide or manslaughter, and the question of whether either of these three offenses were committed are withdrawn from your consideration."

 The trial court committed no error in giving this instruction since there was no evidence on which the jury could have found that the killing was either excusable or justifiable homicide. See *State v. Farley, supra; State v. Biondic,* 47 Wn. (2d) 593, 288 P. (2d) 845 (1955).

The appellant's last assignment of error relates to the alleged misconduct of the prosecuting attorney and the assistant prosecuting attorney in their closing argument to the jury.

 In *State v. Brown,* 35 Wn. (2d) 379, 213 P. (2d) 305 (1949), we said:

"We have held that, while intemperate assertions of opinion *not based upon evidence* will not be tolerated, prosecuting officers will be permitted a *reasonable latitude in argumentative deduction from the evidence. State v. Peeples,* 71 Wash. 451, 129 Pac. 108."

Further, in *State v. Stratton,* 170 Wash. 666, 17 P. (2d) 621 (1932), we said:

"The convincing effect of the evidence against the appellant, contributed to substantially by himself, *independent of any argument on the part of the prosecuting attorney,* clearly justified and manifestly brought about the verdict." (Italics ours.)

Such is the case here. We are satisfied from our examination of the record that the argument made by the state does not constitute reversible error.

In addition to the assignment of error set forth in appellant's brief, the contention was made for the first time in oral argument on appeal that the appellant was denied due process of law because of the lack of experience and ability of counsel. This argument was made by James P. Billberg, *one* of the court appointed counsel, referring to himself.

Since this is a capital case where the accused was defended by counsel appointed by the court, we will not dismiss the contention now urged on behalf of the appellant by invoking the procedural rule to which we ordinarily adhere, that an argument not presented in the trial court will not be heard for the first time on appeal. See *Braman v. Kuper,* 51 Wn. (2d) 676, 321 P. (2d) 275 (1958); *Lewis Pacific Dairymen's Ass'n v. Turner,* 50 Wn. (2d) 762, 314 P. (2d) 625 (1957); *Johnson v. Seattle,* 50 Wn. (2d) 543, 313 P. (2d) 676 (1957).

When an attorney is appointed by the court to defend a person accused of a crime, it is presumed that, as an attorney and officer of the court, he will discharge his full duty in defense of the action. Moreover, in order to be admitted to the practice of law, attorneys are required to satisfy the court that they have attained the requisite learning. Accordingly, attorneys are presumed to have sufficient skill and learning to defend an accused adequately. *State v. Graeber,* 46 Wn. (2d) 602, 283 P. (2d) 974 (1955).

While Mr. Billberg's candor is commendable, the record does not support his contention. The principal error on which counsel seeks to support his contention is, that appellant did not move for a change of venue and that, as a result thereof, the case was tried to a biased jury. Counsel did, in effect, admit in argument that it was determined that no change of venue should be sought because the appellant would not benefit thereby. Further, counsel admitted that the defense did not exhaust all peremptory challenges in selection of the jury. This is a factor to be considered when determining the difficulty of an accused in obtaining an

impartial jury. See *State v. Lindberg,* 125 Wash. 51, 215 Pac. 41 (1923).

Mr. Billberg has been a practicing attorney in the state of Washington for seven years, and he has previously acted as defense counsel in a capital case in Lincoln county, Washington. In additioin to Mr. Billberg, the appellant was defended by Francis P. Cael and no contention was made by either counsel regarding Mr. Cael's inability or inexperience to properly defend the accused. Mr. Cael advised this court during argument that he has been engaged in the practice of law for thirteen years but this was his first criminal case tried before a jury. The record shows clearly that counsel, in particular Mr. Cael, exercised skill and demonstrated the ability of experienced attorneys in the preparation and defense of this action.

In *Commonwealth ex rel. Dion v. Tees,* 180 Pa. Super. Ct. 82, 118 A. (2d) 756 (1955), the court stated:

" ' " . . . it is easy to condemn the exercise of counsel's judgment after the case is lost which would be praised if the case were won. But no lawyer can be expected to do more than exercise a reasonable skill which cannot be fairly judged by the result of the trial alone." . . . The absence of effective representation must be strictly construed. It must mean representation so lacking in competence that it becomes the duty of the court or the prosecution to observe it and correct it. It must be such that "the circumstances surrounding the trial shocked the conscience of the court and made the proceedings a farce and a mockery of justice." ' "

From our careful examination of the record, we are convinced that the verdict of the jury and imposition of the death penalty by the court cannot be attributed to the alleged inexperience or inability of counsel to properly defend the rights of the accused or to the remarks made by the prosecuting attorney during his closing argument to the jury, but are the result of the overwhelming evidence that the appellant committed the ruthless crime of which he was accused. Clearly, the proof presented by the state justified and manifestly brought about the conviction and the resulting sentence.

Finding the appellant had a fair and impartial trial, free from prejudicial error, the conviction and sentence must be affirmed.

It is so ordered.

HILL, C. J., MALLERY, DONWORTH, FINLEY, WEAVER, ROSELLINI, and FOSTER, JJ., concur.

OTT, J., did not participate.

---

October 7, 1958. Petition for rehearing denied.