IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59743-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BYRON JOHN WILSON, | |
| Appellant. | |

CHE, J. — Bryon Wilson's girlfriend, Ashley Pancoast, called 911 to report that Wilson had thrown a vacuum at her and struck her in the side. Law enforcement responded, and Pancoast was transported to the hospital where she was admitted for the treatment of four fractured ribs and a collapsed lung. The State charged Wilson with second degree assault—domestic violence. At trial, both Wilson and Pancoast testified that they had no recollection of how Pancoast sustained her injuries. A jury found Wilson guilty.

Wilson appeals, arguing that the trial court erred by excluding evidence that Pancoast had previously injured herself while intoxicated, thus depriving him of the right to present a defense. We disagree and affirm.

FACTS

Bryon Wilson and Ashley Pancoast had been in an on-again-off-again relationship for 16 years. On January 9, 2024, law enforcement responded to a call about a disturbance at the apartment Wilson and Pancoast shared with Wilson's four-year-old son. Both Wilson and Pancoast were heavily intoxicated.

An hour or two later, Pancoast called 911 reporting that she was in a lot of pain, had thrown up blood, and was having trouble breathing. Pancoast told the operator "my boyfriend threw a fuckin vacuum [] he threw a vacuum cleaner against my [] fuckin face. And I'm [] throwing up blood." 1 Rep. of Proc. (RP) (Apr. 30, 2024) at 144. Pancoast told the operator that she had been drinking.

Law enforcement returned to the apartment following the 911 call. When Officer Andrew Joy arrived at the scene, he found Pancoast at the foot of the apartment stairs, stumbling around the parking lot. Pancoast was clearly intoxicated but was able to make eye contact and respond appropriately to questions with Officer Joy. Pancoast complained of pain around her abdomen and side. Pancoast went to the hospital in an ambulance for treatment of her injuries.

At the hospital, Pancoast told the emergency department staff that her boyfriend had thrown a vacuum against her chest and hit her in the chest. Pancoast was admitted to the hospital where she remained for four days. There, she was treated for injuries consistent with blunt force to the right chest including four fractured ribs and a collapsed lung.

The following day, at the hospital, Pancoast made a written statement of the incident. She indicated that physical force had been used against her; she was afraid of being hurt and afraid a threat would be carried out; she was injured, in pain, and threatened by Wilson. In her own words, Pancoast wrote:

> So yesterday we both were drinking pretty heavily. I bought my brother-in-law flowers for his birthday. [Wilson] threw a huge tantrum and we began to argue. I got done vacuuming and sat on the couch before I put it away. He's screaming at me and he reached to grab the vacuum and he chucked it at me. I covered my face and the bottom of the vacuum hit me on the right side. I immediately fell to my knees. Then he comes over to me, screaming at me to get up, I had to go to the store and get him more whiskey. So I said no. So he punched me right where the vacuum hit me. I was seeing stars. I waited a few hours to see if the pain would go away, but it did not. It just got worse, so I called the paramedics.

2

1 RP (Apr. 30, 2024) at 221; Exhibit 18.

The State charged Wilson by amended information with second degree assault, a crime of domestic violence and aggravated domestic violence.

During motions in limine, the State moved to exclude evidence that Pancoast had fallen while intoxicated and injured herself in the past.

> [STATE]: [Defense Counsel] let us know this morning that he had a conversation with Ms. Pancoast, who, frankly, doesn't remember much. But one of the things she did tell him was that she had—when she is intoxicated, she's fallen in the past. And I didn't quite get all the details but that she has previously broken her ankle—was it from a fall?—
>
> [DEFENSE COUNSEL]: From a fall, intoxicated fall.
>
> [STATE]: —in Hawaii. The State would move to exclude that, that a previous injury—I'm unclear when it happened—would have little relevancy of whether or not these injuries in this case were caused by the Defendant. I anticipate Defense's theory is that she was intoxicated and fell and get the jury to decide which version, but whether or not she's fallen in the past has little relevancy and would just confuse the jury, so we would exclude that.
>
> [TRIAL COURT]: What's your position, [Defense Counsel]?
>
> [DEFENSE COUNSEL]: Yeah, Your Honor, my position would be that relevancy is a very low bar, any fact slightly more likely or not. And given that it is, you know frankly, one of our theories of alternative—an alternative explanation of how the injury could have occurred and it won't be disputed that she was intoxicated, that, you know, the fact that she has done this and has hurt herself falling intoxicated in the past makes it, even if it's, however slightly, more likely that she might have fallen while she—because she was intoxicated on this occasion.
>
> [TRIAL COURT]: I think any physician would tell you—the allegation in this was this is blunt force trauma and rib injuries versus a leg, which is pretty significantly different, so I am going to exclude it.
>
> [DEFENSE COUNSEL]: Understood. Thank you.

1 RP (Apr. 30, 2024) at 127-28.

At trial, the State produced audio of Pancoast's 911 call, Pancoast's written statement, and testimony from the responding officers and the doctor who treated Pancoast at the hospital.

Pancoast testified that her relationship with Wilson was "great." 1 RP (Apr. 30, 2024) at 150. "We don't argue. We have fun. We play board games every night. We don't have any issues. We're loyal. We love each other." 1 RP (Apr. 30, 2024) at 150-51. She explained that she felt horrible about testifying and did not want to be there. Pancoast testified that on the day of the incident, she and Wilson began drinking at 11 am and consumed an entire bottle of whiskey together. Pancoast recalled playing Yahtzee with Wilson and arguing with him about spending money on flowers for a friend's husband, and the next thing she remembered was waking up in the hospital the next day. She testified that she did not recall calling 911 or talking to any police officers. Pancoast testified that she had no memory of how she sustained her injuries but also testified that she was not punched or kicked. Pancoast testified that she still loved and cared for Wilson very much, wanted to be in a relationship with him, and did not want anything negative to happen to him.

Wilson also testified at trial. He testified that he recalled "bits and pieces" of the night in question because he was drunk. 2 RP (May 1, 2024) at 262. Wilson remembered interacting with police and arguing with Pancoast. Wilson denied ever punching or kicking Pancoast and could not recall how she was injured.

In closing, Wilson did not dispute that Pancoast was injured. Instead, Wilson argued that no one knows what caused Pancoast's injuries, pointing to Wilson and Pancoast's intoxication and their testimony that Wilson did not hurt Pancoast. Wilson argued

> The bottom line is, we don't know what happened. Third floor, you saw the stairs in the video. At some point did she go outside and fall walking down the stairs? We don't know. Did she get kicked? She certainly doesn't believe so. Did she get punched? She certainly doesn't believe so.

> The fact that we have all these inconsistencies is reasonable doubt.

2 RP (May 1, 2024) at 292-93.

On rebuttal, the State argued that the evidence of Pancoast's injuries was consistent with all of her statements to law enforcement and hospital staff. The State explained that it did not have to prove precisely what method caused Pancoast's injuries, but argued that it did prove that it was Wilson who inflicted them. The State argued "it's not a reasonable doubt that Ms. Pancoast just fell and succumbed to these significant types of injuries. It's not a reasonable doubt." 2 RP (May 1, 2024) at 299.

The jury found Wilson guilty as charged.

Wilson appeals.

ANALYSIS

Wilson argues that the trial court violated his right to present a defense by excluding evidence that on a previous occasion Pancoast had injured herself while intoxicated. We disagree.

The right to present a defense is constitutionally guaranteed to all criminal defendants. U.S. Const. amend. VI; Wash. Const. art. I, § 22; *State v. Duarte Vela*, 200 Wn. App. 306, 317, 402 P.3d 281 (2017). Whether the constitutional right has been violated is a legal question that we review de novo. *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019). To determine whether a trial court's evidentiary ruling violated a defendant's right to present a defense, we employ a two-step standard of review. *Id*. at 797-98. First, this court reviews the lower court's

rulings for an abuse of discretion. *State v. Jennings*, 199 Wn.2d 53, 58, 502 P.3d 1255 (2022). An abuse of discretion occurs when an evidentiary decision was manifestly unreasonable or based on untenable grounds or reasons. *State v. Gunderson*, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). If we determine that the trial court did not abuse its discretion, we then consider de novo whether the defendant's constitutional right to present a defense was violated by the exclusion of the evidence. *Jennings*, 199 Wn.2d at 59.

## I. EVIDENTIARY RULING

Wilson contends that the trial court's evidentiary ruling excluding the evidence was an abuse of discretion. But his failure to adequately make an offer of proof to the trial court precludes our evaluation of the issue on appeal.

A party cannot appeal a ruling excluding evidence unless they made an offer of proof advising the trial court of the witness's expected testimony. ER 103(a)(2); *State v. Song Wang*, 5 Wn. App. 2d 12, 26, 424 P.3d 1251 (2018). This is so because on appeal, "we evaluate the court's analysis of the proof offered." *State v. Ortuno-Perez*, 196 Wn. App. 771, 788 n.6, 385 P.3d 218 (2016) (emphasis added). The "'offer of proof must be sufficiently definite and comprehensive fairly to advise the trial court whether or not the proposed evidence is admissible.'" *Song Wang*, 5 Wn. App. 2d at 26-27 (quoting *Sutton v. Mathews*, 41 Wn.2d 64, 67, 247 P.2d 556 (1952)). Such an offer informs the court of the legal theory under which the offered evidence is admissible, informs the trial judge of the specific nature of the offered evidence so that it can assess its admissibility, and creates a record adequate for review by the appellate court. *State v. Ray*, 116 Wn.2d 531, 538, 806 P.2d 1220 (1991). The failure to make a sufficient offer of proof tending to establish the admissibility of evidence precludes the right to appeal from a ruling excluding the evidence. *See State v. Smith*, 130 Wn.2d 215, 226, 922 P.2d

811 (1996); *see also Song Wang*, 5 Wn. App. 2d at 27 ("Wang's proffer is insufficient to establish that the police failed to investigate the six participants. We conclude Wang failed to make a sufficient offer of proof to obtain appellate review of this issue.").

Here, Wilson's offer of proof was insufficient to obtain appellate review of this issue. The extent of Wilson's offer of proof was that Pancoast had previously injured herself after falling down while intoxicated. In moving to exclude the evidence, the State shared that the alleged fall occurred in Hawaii and that Pancoast's ankle was injured. The record does not reflect what evidence of the alleged fall would be produced, under what legal theory the evidence was admissible, when or how the alleged fall occurred, or any details of any injuries resulted from the alleged fall. Wilson contends simply that the evidence was relevant, but his offer of proof on the record is insufficient to review any determination of relevancy. Even assuming Wilson had made an adequate offer of proof, he also failed to show any connection between the alleged prior fall and resulting in a leg injury and the injuries the victim sustained in this case. Thus, Wilson's claim fails.

## II. CONSTITUTIONAL QUESTION

Although we hold that Wilson's challenge to the trial court's evidentiary ruling was not adequate for us to review on appeal and thus fails, we review de novo whether the trial court violated his right to present a defense. *Jennings*, 199 Wn.2d at 58. Although "[a] criminal defendant's right to present a defense is guaranteed by both the federal and state constitutions," that right is not absolute. *Jennings*, 199 Wn.2d at 63; *see also* U.S. Const. amend. VI; Const. art. I, § 22. Judges have the discretion to "'exclude evidence that is repetitive . . ., only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.'" *Id*. (alterations in original) (internal quotation marks omitted) (quoting *Holmes v. South Carolina*,

547 U.S. 319, 326-27, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006)). Only relevant evidence is subject to constitutional protection. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010).

As discussed above, Wilson failed to "present [] relevant evidence." *Id*. When a defendant does not produce and adequately offer relevant evidence in support of their defense, the absence of that evidence at trial does not amount to a constitutional violation.

Moreover, Wilson was not barred from presenting his defense theory—that a reasonable doubt existed as to the cause of Pancoast's injuries. Wilson's theory at trial was that no one knew what caused Pancoast's injuries. Wilson emphasized that Pancoast was heavily intoxicated, as supported by her and Wilson's testimony as well as testimony from the responding officers and her treating doctor. In closing argument, Wilson posited to the jury that Pancoast may have fallen down the stairs, arguing "the bottom line is, we don't know what happened." 2 RP (May 1, 2024) at 292. Moreover, the possibility that an extremely intoxicated person might suffer a fall is a matter of common understanding even without evidence that it had happened to this victim in the past. An evidentiary exclusion violates the Sixth Amendment when the defendant's "entire defense" rests on the excluded evidence. *Jones*, 168 Wn.2d at 721. That is not the case here.

In sum, despite any evidentiary restrictions, Wilson was able to present his theory of the case—that the State failed to prove beyond a reasonable doubt that Wilson caused Pancoast's injuries. Wilson cannot now rely on speculative evidence that he failed to adequately offer at the time of trial to claim that his right to present a defense was violated. We hold that Wilson's constitutional right to present a defense was not violated.

No.  59743-8-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, J.

Cruser, C.J.